GORD INDUSTRIAL PLASTICS, INC., Plaintiff-Appellee, *v.* AUBREY MANUFACTURING, INC., Defendant-Appellant.

Second District    No. 80-824

Opinion filed January 29, 1982.—Rehearing denied March 1, 1982.

Bernard M. Kaplan, of Ruben, Kaplan & Rosen, of Skokie, for appellant.

Charles L. Fierz, of Sycamore, for appellee.

JUSTICE HOPF delivered the opinion of the court:
Plaintiff brought this action for breach of contract against defendant in the De Kalb County Circuit Court. Defendant had stopped payment on

a check it had issued as payment for the recovery of certain molds manufactured by plaintiff for defendant. The molds had been retained by plaintiff to make plastic parts for defendant for use in its business. Defendant denied any obligation to pay for the recovery of the molds and counterclaimed for damages it incurred in correcting defects in products made by plaintiff from the molds. The trial court ruled that the parties had arrived at an agreement in the nature of an accord and satisfaction, by which agreement defendant agreed to pay to recover the molds and all claims between the parties were settled. Defendant appeals, contending that there was no accord and satisfaction, and that the parties' contract did not require the payment of a removal fee. It further argues that it is entitled to damages caused by plaintiff's deliveries of defective products made from the mold.

On April 19, 1976, defendant sent plaintiff a "purchase order" for a mold to be used in the manufacture of plastic parts required by defendant in his business, for a price of $5,180. On the front of the order form, at the bottom, was stated, "PLEASE SEND US THE ABOVE SPECIFIED GOODS SUBJECT TO CONDITIONS ON FACE *AND BACK* OF THIS ORDER." On the back of the form was printed a number of terms. Pertinent to this dispute are the following terms:

"BY ACCEPTANCE OF THIS ORDER THE SELLER AGREES TO:

1. *Acknowledgement & Acceptance*:

The vendor must acknowledge receipt of this order promptly and state whether or not it is accepted upon the terms and prices herein specified, make no substitution without authority from us.

＊　＊　＊

16. *Conflicts*:

If any conflict appears between these terms and conditions and the terms and the conditions of your proposal, the terms and conditions of this order shall prevail."

On May 10, 1976, defendant sent a second "purchase order" for another mold at $5,330. The reverse side of this order form listed the same terms as the earlier one.

On May 25, 1976, plaintiff sent a form listing the two molds and their prices, $5,180 and $5,330, and quantities and prices of parts made from the molds. Printed at the bottom of this form was the following: "THE ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS SHEET ARE PART OF THIS PROPOSAL AND SHALL APPLY TO ALL SUBSEQUENT ORDERS ON THE PROPOSAL. PLEASE SIGN ONE COPY ON REVERSE SIDE AND RETURN WITH YOUR ORDER." The pertinent terms on the reverse side stated as follows:

"15. MOLD REMOVAL. In consideration of the engineering services necessary in the designing of molds, and not charged for at the fair market value, all molds shall remain in our possession for one year from the approval of samples or until the sales of the parts produced therefrom equals 10 times the price of molds and tools as built. Thereafter the customer may take delivery of molds and tools 'as is' upon payment of a charge of 30% of their original billing price.

* * *

25. * * * This proposal, when accepted by the customer, shall become a contract only when received at the home office of the company and formally acknowledged."

Below this last term of the proposal was provided space for signature signifying acceptance. Defendant's purchasing agent testified he never signed plaintiff's form.

Thereafter the molds were manufactured and the listed prices were paid by defendant in the fall of 1976. Over the next several years plaintiff produced a number of plastic parts for defendant from the molds. The parts frequently did not come up to specification and many had to be returned to plaintiff. Defendant would receive credit for these. Others were corrected by defendant and by employees of plaintiff sent to defendant's plant for this purpose.

In April 1979 defendant demanded return of the molds. At that time plaintiff informed defendant's purchasing agent that it would not turn over the molds until a removal fee, 30% of the purchase price of each mold, was paid. Defendant's purchasing agent objected and refused. He returned 10 days later, however, after the balance due on the plastic parts was straightened out, to pay, with separate check, the 30% of the purchase price for the molds and the balance owing for the plastic parts. In exchange plaintiff returned the molds to defendant. Three or four days later defendant's purchasing agent, a salesman for defendant, and defendant's legal counsel met and counsel advised that payment of the check issued for the mold removal fee be stopped.

Plaintiff then filed this suit for payment of the check and defendant counterclaimed for damages incurred due to defective parts it had received throughout the course of the parties' business dealings.

The trial court found that the parties had come to an agreement in the nature of an accord and satisfaction by which agreement the differences of opinion were settled. Therefore, it ruled, plaintiff was entitled to payment of the check and defendant could not now raise a counterclaim for damages.

■■■ An accord and satisfaction is an agreement between the parties which settles a bona fide dispute over an unliquidated sum. There must be

consideration, a meeting of the minds with intent to compromise (which may be inferred from the parties' words and actions) and, finally, execution of the agreement. (*Koretz v. All American Life & Casualty Co.* (1968), 102 Ill. App. 2d 197, 243 N.E.2d 586.) An accord and satisfaction supersedes the terms of the original contract. Thus, it typically is raised in defense of an action brought on a contract. (*Metro-Goldwyn-Mayer, Inc. v. ABC-Great States, Inc.* (1972), 8 Ill. App. 3d 836, 291 N.E.2d 200; *Koretz v. All American Life & Casualty Co.*) Accord and satisfaction may be the basis for a complaint, however, and a party may sue another for noncompliance of an agreement. See *Sears, Sucsy & Co. v. Insurance Company of North America* (N.D. Ill. 1975), 396 F. Supp. 820.

■■ We do not agree that the exchange of payment for the molds can be termed an accord and satisfaction. The dispute was not how much was owed, for it is clear that, if any amount, it would be 30% of the purchase price, but it was whether that amount was owing at all. Moreover, plaintiff clearly did not act in a spirit of compromise: it demanded, and received, what it considered it was due under the contract. Neither do we consider that the exchange of the molds for the payment was reached by compromise and settlement, for a compromise and settlement requires an offer and acceptance to compromise. (*Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 356 N.E.2d 837.) Plaintiff clearly did not offer a compromise. The only concession was defendant's.

Having concluded that the exchange of the 30% payment for the molds was not an accord and satisfaction, we must turn to an examination of the writings of the parties to determine what they actually had contracted so that we may determine whether or not defendant was obliged to pay a mold removal fee.

Defendant argues that his April 19, 1976, and May 10, 1976, purchase orders were offers. Each of these "offers" expressly limited acceptance to its terms. Defendant argues that plaintiff's invoices billing defendant for the molds at the prices stated in defendant's "offers" indicate acceptance of the terms of those offers. This argument ignores the fact that if the mold removal fee was to be paid at all it was to be paid at the time of removal, not manufacture. There was no reason for the invoices to mention the mold removal fee. This argument also ignores the fact that plaintiff had itself issued a form on May 25, 1976, which listed the molds at the prices stated by defendant but which on the reverse included provision for a mold removal fee that required acceptance of this "proposal" by the purchaser's signature on the form.

It is clear that defendant's "purchase orders" are offers to purchase certain molds at specific prices. They invite acceptance by the plaintiff, the manufacturer, but only "upon the terms and prices * * * specified," with "no substitution" of terms. Plaintiff responded to these orders with

its "proposal" requesting acceptance of its terms. The question is, did these writings form a contract and, if so, what were the terms.

A response to an offer may be an acceptance even though additional terms are proposed:

"(1) A definite and seasonable expression of acceptance * * * which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered * * * unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer; * * *." Ill. Rev. Stat. 1975, ch. 26, par. 2—207.

Assuming plaintiff's May 25, 1976, response is an acceptance we note that it includes terms different from the terms of defendant's offer. A term adding a 30% removal fee can not become part of a contract in which the offer made no mention of such a fee and expressly limited acceptance to its terms.

■■■ We believe, however, that plaintiff's May 25, 1976, response was not an acceptance but a counteroffer. Section 2—207 of the Uniform Commercial Code—Sales (Ill. Rev. Stat. 1975, ch. 26, par. 2—207(1)) provides that "[a] definite and seasonable expression of acceptance * * * operates as an acceptance" even though it does not perfectly reflect the terms of the offer. Although the Uniform Commercial Code operates to make the formation of a contract not dependent upon a requirement that offers and acceptances perfectly reflect each other in every aspect, it still requires "a definite expression of acceptance and does not change the basic common-law requirement that there must be an objective manifestation of mutual assent." (*McCarty v. Verson Allsteel Press Co.* (1980), 89 Ill. App. 3d 498, 510, 411 N.E.2d 936.) Plaintiff's May 25, 1976, form provided that its terms are to apply to "all * * * orders on the proposal." It added, "Please sign one copy on reverse side and return with your order." On the reverse of the form was stated, "This proposal, when accepted by the customer, shall become a contract only when received at the home office of the company and formally acknowledged." The words indicate the extension of an offer, not an acceptance of one. It appears that the parties' writings constitute an offer and a counteroffer. Further, the inclusion of an additional term and a request to sign the form arguably makes the "acceptance" conditional upon acceptance of the new terms. Therefore it could not operate as an acceptance, in which case it would operate as a counteroffer and no contract is formed on the basis of terms of either of these "offers." *Album Graphics, Inc. v. Beatrice Foods Co.*

(1980), 87 Ill. App. 3d 338, 347, 408 N.E.2d 1041; *Tecumseh International Corp. v. City of Springfield* (1979), 70 Ill. App. 3d 101, 388 N.E.2d 460.

There is no indication that plaintiff's counteroffer was accepted by defendant. Defendant's purchasing agent testified that he never signed plaintiff's form, as requested, and there is no writing in evidence in which defendant makes "[a] definite and seasonable expression of acceptance" (Ill. Rev. Stat. 1975, ch. 26, par. 2—207(1)). Although neither party's offer was accepted this is not to say that there was no contract. Subsection 2—207(3) of the Uniform Commercial Code provides that a contract is formed when the parties' action reflects a formation of a contract even where, as here, the writings of the parties did not establish one:

> "(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act." Ill. Rev. Stat. 1975, ch. 26, par. 2—207(3).

Even though neither offer could dictate the form which the contract was to take, the offers and the parties' conduct do establish that there was a contract. The terms upon which the parties' forms agree, plus any supplementary terms supplied by the Uniform Commercial Code, are the terms of this contract.

Among the terms with which the Uniform Commercial Code may supplement a contract are the parties' course of dealings and the usage of trade. A course of dealings, a sequence of previous conduct of the parties to be regarded as a basis for establishing an understanding of their interpretation of their conduct (Ill. Rev. Stat. 1975, ch. 26, par. 1—205(1)), and a usage of trade, a practice or method of dealing in an industry of such regular observance in the area that it justified an expectation of this observance in the transaction in question (Ill. Rev. Stat. 1975, ch. 26, par. 1—205(2), "give particular meaning to and supplement or qualify terms of an agreement." Ill. Rev. Stat. 1975, ch. 26, par. 1—205(3).

We think that a mold-removal fee, if shown to be understood in the parties' course of dealings or a usage of the plastics molding industry, would be a term supplementing or qualifying the terms fixing the prices of the molds, and thus part of the contract.

Plaintiff offered evidence at trial in support of an argument that the course of dealings or usage of trade required the incorporation in the contract of a provision for a mold-removal fee. We think that whether the course of dealings of the parties or the usage of trade in the area supplement the contract by incorporating a mold-removal fee into the parties' contract is a matter of fact to be determined by the trial court.

Subsection 1—205(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 1—205(2)) specifically provides that "[t]he existence and scope of [a usage of trade] are to be proved as facts." We think the same is also true with regard to course of dealings. It is for the fact finder, the trial court, to find whether or not the evidence proves the parties' course of dealings or the usage of trade in the area incorporate a mold removal fee into the contract. If so, the court must determine the scope of the fee, in other words, the percentage of the purchase price commonly used as a mold removal fee.

With respect to defendant's contention that it should have been awarded damages to its counterclaim, we note that the trial court's ruling that the parties had agreed to an accord and satisfaction caused no finding to be made regarding this question. We remand to the trial court to make a finding whether defendant is entitled to damages, and, if so, the extent of those damages.

We reverse the ruling of the trial court that the parties had reached an agreement in the nature of an accord and satisfaction, and we remand in order that the court may determine whether the contract formed by the parties included, by means of course of dealings or usage of trade, a mold-removal fee and, if the court does so find such a provision incorporated, the size of the fee. We also remand the cause in order that the trial court may make findings on defendant's counterclaim.

Reversed and remanded.

LINDBERG and NASH, JJ., concur.