GORD INDUSTRIAL PLASTICS, INC., Plaintiff-Appellee, *v.* AUBREY MANUFACTURING, INC., Defendant-Appellant.

Second District   No. 2—83—0763

Opinion filed September 24, 1984.

Barnard M. Kaplan, of Ruben, Kaplan & Rosen, of Skokie, for appellant.

Charles L. Fierz, P.C., of Sycamore, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

In a prior appeal (*Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.* (1982), 103 Ill. App. 3d 380), we concluded that "a mold-removal fee, if shown to be understood in the parties' course of dealings or a usage of the plastics molding industry, would be a term supplementing or qualifying the terms fixing the prices of the molds, and thus part of the contract." (103 Ill. App. 3d 380, 386.) We remanded the cause to the trial court to determine whether the contract formed by the parties "included, by means of course of dealings or usage of trade, a mold-removal fee and, if the court does so find such a provision incorporated, the size of the fee *** [and to make] findings on defendant's counterclaim." 103 Ill. App. 3d 380, 387.

Following an evidentiary hearing, the trial court found that: Both plaintiff and defendant were operating in the plastics industry and to some extent both were engaged in molding plastic parts; Mr. Johansen, an officer of the defendant, was an experienced molder and understood the problems of molding plastic parts; "[t]he Standards and

Practices of Plastics Custom Molders promulgated by the Society of the Plastics Industry Inc., *** provide, that if molds are removed from the custom molder's possession, it is the customary practice to require a mold removal fee"; there was additional testimony that a mold-removal fee was standard practice; the "order form was repeatedly furnished defendant and contained references to a mold removal fee"; defendant's purchasing agent first objected to the payment of the fee, but on checking with other firms in the industry found it was a common practice, paid the fee and thereafter improperly stopped payment on the check. The court also found, based on expert testimony, that mold-removal clauses were common in the plastic molding industry ranging up to 50% of the cost of the mold and thus, that the 30% charge is reasonable. The court ordered judgment to be entered in favor of Gord in the amount of $3,153.90.

I

The essential question, as to the issue of the mold-removal fee, is whether the evidence supports the conclusion that a mold-removal fee is customary in the trade, so that such a term became incorporated into the parties' contract and, if so, whether the fee charged was reasonable.

Preliminarily, Aubrey's argument that the contract consists of the terms on the reverse of its purchase order only ignores the first decision of this court. There we ruled that the parties have no written contract, but one created by their conduct, supplemented by customs and usages of the trade, if any, and by terms on which the writings agree. (*Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.* (1982), 103 Ill. App. 3d 380, 386.) A question of law decided on a previous appeal is binding on both the trial court and the appellate court. *Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 667.

Further, Aubrey's argument that there is no evidence that it was aware of the custom misses the point that parties may be charged with knowledge of any usage or custom in the trade "of which they are or *should be aware.*" (Emphasis added.) Ill. Rev. Stat. 1983, ch. 26, par. 1—205(3); see also *Clark v. General Foods Corp.* (1980), 81 Ill. App. 3d 74, 78-79.

■■ ■ We conclude that there was sufficient proof that the mold-removal fee was shown to be of "such regularity of observance in a *** trade as to justify an expectation that it will be observed with respect to the transaction in question ***." (Ill. Rev. Stat. 1983, ch. 26, par. 1—205(2).) The term to be established as part of a contract by custom and usage of the trade must not be inconsistent with the other

contract terms, must be well-settled and uniformly acted upon, and must be established by several witnesses. "It must have existed for a sufficient length of time to become generally known and to warrant a presumption that all contracts in the line of business to which the custom applies are made with reference to it." *Kelly v. Carroll* (1921), 223 Ill. App. 309, 315; see also *Chicago Bridge & Iron Co. v. Reliance Insurance Co.* (1970), 46 Ill. 2d 522, 531-32.

In the present case, Gord's comptroller and the plant manager of another mold maker both testified that the mold-removal fee is customary in the industry. Aubrey's purchasing agent also conceded that he discovered, upon inquiry, that mold-recovery fees are common in the industry.

Gord introduced a booklet, published by the Society of the Plastics Industry, Inc., entitled "Standards and Practices of Plastics Molders and Plastics Molded Parts Buyers Guide," copyright 1965, revised 1978. The following statement from the booklet was entered into evidence.

"Because molds are generally quoted at cost with no charge for engineering, a molder has considerable investment in a customer's mold by the time it is in production. For this reason, it has been customary for the custom molder to retain tools, molds and equipment which he has built or contracted to build. If the molds are removed from his possession, it has been normal for the molder to receive a removal fee to recover his engineering costs."

Both Gord's president and the other molder's plant manager testified that the Society is respected as a standard in the industry to which people can look for guidance and advice, and its standards are generally used in the industry. Since the witnesses identified the Society as a reliable and relied upon standard in the industry, it was within the court's discretion to admit the booklet. In any event it would have been harmless error because cumulative, since the two witnesses also testified orally to the same standard.

█ Defendant argues that it is not a mold maker and is thus not "in the business" of mold making. However, a party need not deal primarily in a trade in order to be charged with knowledge of its customs. For example, the plaintiff in *Clark* operated an employment agency. The defendant there used employment agencies to recruit employment prospects. The *Clark* court charged the defendant with knowledge of the employment agency field's customs and usages, including that custom in which an agency charged a fee if an employer hired a prospect whose name it had received from the agency within

the past year, even though it had never encountered that provision before. *Clark v. General Foods Corp.* (1980), 81 Ill. App. 3d 74, 78-79; accord, *Snedden v. General Radiator Division of Chromalloy American Corp.* (1982), 111 Ill. App. 3d 128, 132.

## II

■ We have reviewed the record and conclude that Aubrey's counterclaim, based on its claim for damages allegedly for replacement of faulty products, labor costs for inspection, shutting down production lines, cost of handling shipments in excess of those ordered, cost of conversion to "center gating" and labor costs for replacement of defective parts, was properly denied. The trial court found on conflicting evidence that the molding technique, "sidegating," specified by Aubrey, was the cause of the quality problems. It also noted that there had been adjustments made from time to time and that there were no unresolved claims prior to the suit. The trial court's order finding against Aubrey on the counterclaim is not against the manifest weight of the evidence.

The judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

HOPF and NASH, JJ., concur.