LATEX GLOVE COMPANY, INC., Plaintiff-Appellant, v. ALFRED J. GRUEN, Indiv. and d/b/a Marco-Gruen Printers, Defendant-Appellee.

First District (3rd Division) No. 85—3393

Opinion filed August 20, 1986.

Marks, Marks & Kaplan, Ltd., of Chicago, for appellant.

Paul T. Fox and Lori A. Schaffel, both of Holleb & Coff, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Latex Glove Company, Inc., appeals an order of the trial court dismissing its complaint against defendant, Alfred J. Gruen, individually and doing business as Marco-Gruen Printers. The issue on appeal is whether the trial court erred when it dismissed the action with prejudice and denied plaintiff the opportunity to further amend its complaint.

Plaintiff filed an original and three amended complaints, and unsuccessfully requested leave to file a fourth amended complaint. On May 18, 1982, plaintiff filed the original complaint, alleging that defendant produced a catalog for plaintiff pursuant to an oral agreement. In response to plaintiff's subsequent demand, however, defendant refused to deliver various color separations used for the production of the catalog. Plaintiff sought specific performance and damages.

On July 28, 1982, defendant filed an answer. On September 6, 1983, after defense counsel was substituted, defendant was granted leave to withdraw his answer. On the same day, defendant filed a motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 2—615.) The motion alleged that the complaint failed to state a cause of action for specific performance, failed to state a claim for injunctive relief, and failed to adequately allege damages. Thereafter, plaintiff learned through discovery that color separations and other by-products it sought were no longer in defendant's possession. On September 28, 1983, the trial court granted plaintiff's motion to withdraw its original complaint in chancery, and to file its amended complaint at law.

On November 10, 1983, plaintiff filed its first amended complaint at law. It alleged that defendant had orally agreed to produce a catalog for plaintiff and that an additional term, requiring the delivery of the by-products of the catalog production, was implied by trade usage. Plaintiff requested specific damages, along with damages for lost profits. On February 8, 1984, defendant filed a motion to strike and dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619). The motion maintained that the action was barred by the Statute of Frauds (Ill. Rev. Stat. 1983, ch. 59, par. 1 *et seq.*) and the parol-evidence rule, and that the lost-profit damages were insufficiently alleged. On March 19, 1984, the trial court found that the complaint was barred by the Statute of Frauds and dismissed the action with prejudice. On June 14, 1984, however, at a hearing on plaintiffs motion to vacate the order, the trial court modified its order by allowing plaintiff to file a second amended complaint. The court also transferred the matter to the law division because the equitable issues had been withdrawn.

Plaintiff's second amended complaint contained additional allegations regarding the by-products having been specifically manufactured, and having been expressly included in defendant's written proposal. Defendant renewed the motion to strike and dismiss the

complaint, arguing that the by-products were separately identifiable goods and thus ownership could not be a term implied in the catalog contract by trade usage. Defendant again argued that the allegations regarding lost profits were legally insufficient, and that the agreement was barred by the Statute of Frauds. On February 28, 1985, the trial court ordered the second amended complaint stricken without prejudice. The court found ambiguities in the factual allegations, along with conflicts between the exhibits and the pleadings which rendered the complaint factually insufficient.

On March 26, 1985, plaintiff filed its third amended complaint which contained additional factual allegations and which is the subject of this appeal. The third amended complaint alleged that in 1980 defendant submitted a written proposal, attached to the complaint as Exhibit A, to plaintiff for the production of a catalog. Exhibit A was entitled "catalog quotation" and detailed various specifications, including listing "complete typesetting, photos, keylines, separation plates and 4 color printing." Alternative quantities and prices of 20,000 catalogs at $35,000 or 30,000 at $41,000 were also set forth in the proposal.

The third amended complaint alleged further that trade usage held that the by-products necessarily created from the production of a catalog, including films, negatives, color separations and plates, are retained by the catalog producer until requested by the purchaser, when they must be delivered to the purchaser for its use and benefit.

The complaint alleged that plaintiff's employees and defendant met on September 8, 1980, when defendant orally agreed to produce for plaintiff 25,000 copies of the catalog "and to furnish all by-products" for a cost of $38,000. The complaint stated that by a letter dated September 17, 1980, attached to the complaint as Exhibit Z, defendant confirmed this oral agreement. Exhibit Z is written on the letterhead of Age Advertising, Inc., not a party to this suit, and signed: "Age Advertising, Inc., [signature], Alfred J. Gruen." The letter states that the quantity of catalogs to be produced was 25,000 at a price of $38,000. It stated further that defendant would "furnish all photography in color, all typography, art and keyline pasteup, color proof and the final product" of a 44 page catalog. Nothing in the letter referred to the by-products at issue in this case.

The third amended complaint alleged further that defendant should have been, or was, aware of the trade usage; that the agreement was later supplemented to include additional products for an added cost of $13,670, as detailed in an invoice attached to the complaint; that plaintiff paid defendant in full and defendant produced

and delivered the catalogs; that the by-products were not usable for any commercial purpose except producing publications for plaintiff; and that plaintiff had suffered damages, including delay in the production of a new catalog.

Defendant filed a motion to strike and dismiss the third amended complaint, maintaining that plaintiff failed to sufficiently allege offer and acceptance of the catalog contract. Defendant also renewed the arguments that trade usage could not be used to imply the obligation to deliver the by-products to plaintiff, and that the catalog contract was barred by the Statute of Frauds. On June 20, 1985, the trial court dismissed the complaint with prejudice. The court found that plaintiff "barely had enough ultimate facts" to establish the oral contract for the catalog. The court also found that "the pleadings relating to custom and usage [were] sufficient." The court based its dismissal partly on the complaint's failure to adequately plead damages for lost profits. The court also based the dismissal on the inadequacy of the allegation that the catalog agreement, including the by-products obligation, was confirmed by a letter, because the attached confirmation letter made no mention of the by-products.

On October 30, 1985, the trial court heard arguments regarding plaintiff's motions to vacate the June order and to file a proposed fourth amended complaint. The proposed fourth amended complaint contained allegations similar to those in the third amended complaint, plus several relevant charges. It added language stating that the plaintiff's right to the by-products "is a right which is expressly or implicitly contained in every contract, oral or written, for the production of catalogs." It also stated that Exhibit Z confirmed the oral contract and "set forth some, but not all, of its terms." The new pleading added a paragraph regarding damages: "It was within the contemplation of the parties when the agreement was made that the by-products, which were to be retained by defendant and delivered to plaintiff at its request in accordance with the Agreement and the trade usage implied therein, would be requested and used by plaintiff in production of subsequent catalogs, and that if the by-products were not so delivered, it would be necessary for plaintiff to recreate the same at additional cost, which would necessitate delays in the preparation and distribution of the new catalogs." Finally, it alleged that because of defendant's refusal to deliver the by-products, production of new catalogs was delayed and plaintiff suffered a loss of $6,500 in profits.

Plaintiff appeals from the trial court's dismissal of the third amended complaint with prejudice and the court's refusal to vacate

the dismissal or grant leave to file a fourth amended complaint.

■ The first issue presented is whether the complaint was factually insufficient to state a cause of action for breach of the contract to produce catalogs. Section 2—601 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—601) requires that substantial averments of fact must be alleged in stating a cause of action. Properly pleaded allegations and well-pleaded facts must be taken as true for the purpose of considering a motion to dismiss, but conclusions of law or fact unsupported by allegations of specific facts will not be admitted by a motion to dismiss. (*Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 341 N.E.2d 101.) A complaint which sets forth a cause of action for breach of contract must allege facts sufficient to indicate offer, acceptance and consideration. (34 Ill. App. 3d 861, 341 N.E.2d 101.) In addition to the existence of a contract, the complaint must allege plaintiff's performance of all contractual conditions, the facts of defendant's alleged breach, and the existence of damages as a consequence thereof. *Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 428 N.E.2d 1028.

■ ■ While admitting that "some agreement existed between someone," defendant urges that the third and fourth amended complaints fail to adequately allege an acceptance which is consistent with any of the offers alleged, and fail to adequately allege the existence of damages. The relevant allegations in the complaint include: the August 30, 1980, written "catalog quotation" made by defendant's agent, quoting a price of $35,000 for 20,000 catalogs, or $41,000 for 30,000 catalogs (Exhibit A); an oral offer made by defendant during the September 8, 1980, meeting which resulted in an agreement that the complaint states was the "same as set forth in" Exhibit A, but then states that the terms were 25,000 catalogs for $38,000; the September 1980 oral agreement's confirmation letter dated September 17, 1980 (Exhibit Z), for 25,000 catalogs at $38,000; and an agreement evidenced by defendant's invoice (Exhibit B), which showed 25,200 catalogs and additional pages, photography and changes bringing the total cost of the agreement to $52,335, which was paid in full by plaintiff (Exhibit C). The differences in the quantity and price terms demonstrate that the complaint's allegations regarding the formation of the contract to produce catalogs lack clarity and consistency, thus increasing the difficulty a court would face if it were to imply additional terms involving the by-products. The elements of this oral agreement are unclear. (See *Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 341 N.E.2d 101.) Additionally, we note that nonparties both made and accepted these various offers.

The trial court also correctly found that the damages for loss of profits were inadequately pleaded. The complaint must allege facts which show that the allegedly lost profits can be proved with reasonable certainty; were proximately caused by the wrongful act of defendant; and were reasonably within the contemplation of the parties at the time the contract was formed. (*F. E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.* (1982), 105 Ill. App. 3d 1135, 435 N.E.2d 724.) Here, the third amended complaint fails to describe how the damages were incurred, how the lost profits were proximately caused by a wrongful act of defendant, how they could be proved with reasonable certainty, or that they were reasonably within the contemplation of the parties at the time the contract was formed.

Even if we were to find a contract as alleged, however, the crux of the complaint's insufficiencies relate to the allegations involving the by-products. The issue is whether the pleadings permit us to give effect to a term establishing by-product ownership. Plaintiff contends that, although no express agreement was made regarding the by-products, a term is implied in the contract by trade usage, requiring defendant to deliver the by-products to plaintiff upon demand. Defendant counters that trade usage cannot be used to create a new contract for separate, identifiable goods; and that the Statute of Frauds precludes enforcement of the contract except insofar as it has been performed.

■ Plaintiff places much emphasis on the argument that even without an express agreement regarding the by-products' ownership or confirmation of the term in the writings, the term can be implied by trade usage. Under the Uniform Commercial Code, the terms with which a contract may be supplemented include those implied by usage of trade. (Ill. Rev. Stat. 1985, ch. 26, par. 1—205.) Trade usage is a practice or method of dealing in an industry of such regular observance in the area that it justifies an expectation of observance in the transaction at issue. (Ill. Rev. Stat. 1985, ch. 26, par. 1—205(2); *Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.* (1982), 103 Ill. App. 3d 380, 431 N.E.2d 445.) Trade usage gives particular meaning to and supplements or qualifies terms of an agreement. Ill. Rev. Stat. 1985, ch. 26, par. 1—205(3).

■ Trade usage is used to fill a gap in the contract, such as terms regarding delivery, credit, and quality of performance. (See, *e.g., GNP Commodities, Inc. v. Walsh Heffernan Co.* (1981), 95 Ill. App. 3d 966, 420 N.E.2d 659 (trade usage permits delay of inspection of meat until buyer is prepared to resell); *Barliant v. Follett Corp.* (1985), 138 Ill. App. 3d 756, 483 N.E.2d 1312 (trade usage requires

cash customers to add 10% of their order's cost to cover mailing expenses); *URSA Farmers' Co-Operative Co. v. Trent* (1978), 58 Ill. App. 3d 930, 374 N.E.2d 1123 (quality of product and delivery time established by custom).) The term for the sale of the by-products which plaintiff wishes to have imposed on defendant here is not a gap-filling term, but rather is a new obligation for separate goods. See *Hufford v. National Retailer-Owned Grocers, Inc.* (1957), 16 Ill. App. 2d 1, 147 N.E.2d 437.

Plaintiff's reliance on *Gord Industry Plastics, Inc. v. Aubrey Manufacturing, Inc.* (1982), 103 Ill. App. 3d 380, 431 N.E.2d 445, to show that the by-products term can be implied by trade usage is misplaced. In *Gord,* the court allowed evidence of trade usage to supplement or qualify the terms in a contract for the sale of plastic parts. The parties had each made offers, with no acceptance, and partial performance had been completed. Under a "battle of the forms" analysis, the court found the parties' actions reflected the formation of a contract, and the terms would be those upon which the parties' forms agreed. Trade usage would be used to supplement those terms. The plaintiff manufacturer had included a term expressly providing for its retention of certain molds used for manufacturing the plastic parts. Plaintiff was to keep the molds for a specified period, and then the defendant customer would pay an extra charge in the amount of 30% of the original sale price before the manufacturer was obligated to deliver the molds to defendant.

In contrast, plaintiff here asks the court to impose a new obligation instead of filling a gap in the contract terms. Unlike *Gord,* the present case does not involve a "battle of the forms" with one form containing express terms regarding sale of by-products, and does not require the supplementation of existing terms. The amended pleadings fail to allege a fact situation where trade usage would be proper.

In view of our holding, it is unnecessary to consider defendant's additional argument that this action is barred by the Statute of Frauds.

■ Given our holdings above as to the third amended complaint and proposed fourth amended complaint, we conclude that the trial court acted properly in dismissing plaintiff's third amended complaint and in denying plaintiff leave to file a fourth amended complaint. (See *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 466 N.E.2d 1137.) A trial court has the discretion to either allow the further amendment of pleadings, or to finally terminate the litigation, and the court's refusal to allow amendment will be reversed only if that discretion is abused. (*Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill.

App. 3d 740, 431 N.E.2d 1175.) The court may consider whether plaintiff has had previous opportunities to assert the claim. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(c); *Ennis v. Illinois State Bank* (1969), 111 Ill. App. 2d 71, 248 N.E.2d 534.) In the present case, plaintiff submitted five different complaints and received numerous hearings before two judges over a four-year period. The original complaint was withdrawn; the first, second and third amended complaints were dismissed; and the fourth amended complaint was not allowed to be filed. A party does not have a right to unlimited amendments. (*Beresky v. Teschner* (1978), 64 Ill. App. 3d 848, 381 N.E.2d 979.) Plaintiff here had a fair opportunity on several occasions to plead the facts necessary to support a cause of action for breach of contract, but is apparently unable to do so. We conclude that the trial court did not abuse its discretion in terminating the litigation.

For the forgoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI, P.J., and McGILLICUDDY, J., concur.