**CAPITOL CONVERTING EQUIPMENT, INCORPORATED, Plaintiff–Appellant,**

v.

**LEP TRANSPORT, INCORPORATED, Defendant–Appellee.**

No. 91–2658.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1992.

Decided June 5, 1992.

---

Allen W. Oshinski, James T. Ryan (argued), Ryan & Nelson, Arlington Heights, Ill., for plaintiff-appellant.

Kathleen M. Smith, North & Associates, Glen Ellyn, Ill., Kenneth E. North (argued), Bollinger, Ruberry & Garvey, Chicago, Ill., Andrew David Kaplan, Andrew R. Spector, Hyman & Kaplan, Miami, Fla., for defendant-appellee.

Before RIPPLE and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Capitol Converting Equipment, Inc. (Capitol) hired LEP Transport, Inc. (LEP) to arrange for the transportation of certain machinery from Genoa, Italy to Chicago, Illinois. Because the machinery never reached Chicago, Capitol sued LEP under the Carmack Amendment, 49 U.S.C. § 11707, and for breach of contract under Illinois law. The district court granted LEP's motion for summary judgment, holding that the Carmack Amendment is inapplicable to this transaction and that LEP's liability to Capitol is limited to $150.00 under Illinois law. For the reasons that follow, we affirm.

I.

Capitol markets industrial machinery to manufacturers of cardboard and paper containers; LEP's business includes arranging for the international and domestic transportation of goods. Capitol and LEP have done business together since approximately 1977, engaging in "hundreds of transactions" during that time.[1] In November

---

**1.** Our statement of the facts is taken from the parties' Local Rule 12 statements of uncontested facts. R. 78, 81.

1985, Capitol's president Norman Singer phoned LEP and requested that LEP arrange for the transportation of three crates of machinery from Genoa to Chicago. No discussion regarding LEP's liability for lost or damaged goods occurred during the phone call. Ultimately, the machinery was shipped from Genoa aboard the vessel *Pilar* of the ocean carrier, Italia Di Navigazione, SPA (Italian Line). A bill of lading was issued by Italian Line to cover the machinery in its transit from Genoa to Chicago; the terms of shipment were noted on the bill of lading as "shipper's load and count, house to house, freight prepaid." Although the machinery arrived in Norfolk, Virginia on January 6, 1986, the machinery was never delivered to Capitol. For reasons the record leaves unclear, the machinery was sold by the United States Customs Service.

After LEP and Capitol's phone conversation, but apparently before either became aware of the fate of Capitol's machinery, LEP sent Capitol an invoice for its services in arranging for the machinery's transportation, and for freight charges LEP had prepaid on behalf of Capitol. At the bottom of the front of this letter-size invoice appears the instructions "SEE REVERSE SIDE FOR TRADING CONDITIONS." On the reverse side are nine standard terms and conditions in separately numbered paragraphs. These same terms were included on the back of each invoice LEP sent Capitol during the time they did business together. The two relevant paragraphs state:

> 1. The Company assumes no liability as a carrier, and is not to be held responsible for any loss or damage to the goods to be forwarded, but undertakes only to use reasonable care in the selection of carriers, truckmen, lightermen, forwarders, agents, warehousemen and others to whom it may entrust the goods for transportation, handling and/or storage or otherwise, subject to the conditions imposed by such carriers and other parties.

> \* \* \* \* \* \*

> 5. The Company shall not be liable or responsible for any claim or demand from any cause whatsoever, unless in each case the damages alleged to have been suffered be proven to be caused directly by the negligence of the company, its officers or employees, in which event the liability of the Company shall not exceed $50.00 per package.

■ As a result of the failed shipment, Capitol began this case against LEP as a one-count breach of contract action in diversity under Illinois law. Subsequently, Capitol added an additional count under 49 U.S.C. § 11707 (the Carmack Amendment), and also added another defendant (Containership) who was allegedly involved in the shipment once it reached Virginia. In November 1990, the district court granted LEP summary judgment on both counts, limiting its liability to Capitol to $150.00 (three boxes at $50.00 each). *See Capitol Converting Equipment, Inc. v. LEP Transport, Inc.*, 750 F.Supp. 862 (N.D.Ill. 1990). LEP then consented to an entry of judgment against it for $150.00.[2] The entire litigation was eventually terminated on June 18, 1991 when the district court granted Containership summary judgment as well. This appeal followed; Capitol appeals only the summary judgments in favor of LEP.

## II.

■ We first address the district court's grant of summary judgment to LEP on Capitol's Carmack Amendment claim.

---

**2.** Although LEP points out that a Rule 58 judgment was never entered by the district court, this oversight does not deprive us of jurisdiction if it is clear from other sources that an order is final. *First National Bank of Chicago v. Comptroller of the Currency*, 956 F.2d 1360 (1992). Here, finality is evident from Judge Moran's November 19, 1990 order regarding LEP's consent to entry of judgment against it on count two of Capitol's complaint, *see* R. 93, 94, and again in Judge Moran's order granting summary judgment to Containership, which concluded this litigation in the district court. *See* R. 117, 118. Thus, we have jurisdiction under 28 U.S.C. § 1291.

The district court granted LEP summary judgment on the ground that the Carmack Amendment was inapplicable to Capitol's shipment because it was governed by a "through" bill of lading issued in a foreign country. *See Capitol,* 750 F.Supp. at 864–65. We agree that LEP is entitled to summary judgment on this issue. The Carmack Amendment is an amendment to the Interstate Commerce Act that imposes liability on certain carriers for the loss of goods. 49 U.S.C. § 11707; *see Reider v. Thompson,* 339 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698 (1950). It applies to "a common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title." 49 U.S.C. § 11707. This jurisdiction does not extend to shipments by water, rail or motor carriers from a foreign country to the United States, *see* 49 U.S.C. §§ 10501, 10521, 10561, unless a domestic segment of the shipment is covered by a separate domestic bill of lading. *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 701 (11th Cir.1986), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987). A bill of lading issued in a foreign country to govern a shipment throughout its transportation from abroad to its final destination in the United States is termed a "through" bill of lading. Because such a "through" bill of lading includes no separate domestic segment as described above, the Carmack Amendment is inapplicable. *See Swift Textiles,* 799 F.2d at 701; *see also Reider,* 339 U.S. at 117, 70 S.Ct. at 501 (earlier version of Carmack Amendment does not cover goods shipped under a through bill of lading issued in a foreign country); *Tokio Marine & Fire Insurance Co. v. Hyundai Merchant Marine Co.,* 717 F.Supp. 1307, 1309 (N.D.Ill.1989); *Fine Foliage of Florida, Inc. v. Bowman Transportation, Inc.,*

698 F.Supp. 1566, 1571 (M.D.Fla.1988), *aff'd,* 901 F.2d 1034 (11th Cir.1990).

■ Whether a bill of lading is a "through" bill of lading is predominantly a question of fact. *See, e.g., Tokio Marine,* 717 F.Supp. at 1309. Capitol, however, has failed to present any conflict on this question. In LEP's Rule 12(m) [3] statement supporting its motion for summary judgment, it listed as undisputed several key facts regarding the bill of lading. First, LEP noted that the bill of lading covering Capitol's shipment was issued by Italian Line in Italy, that the bill of lading shows Genoa as the place of acceptance and Chicago as the place of delivery, and that the bill of lading was "house to house" with freight prepaid. More precisely, LEP also stated that the bill of lading was a "through bill of lading issued by the Italian Line," and that "no domestic bill of lading was ever issued for this shipment." R. 78 ¶¶ 10–12, 20, 25. Capitol's Rule 12(n) statement did not controvert these facts or supplement them in any manner. *See* R. 81. Further, it did not respond to the numbered paragraphs of LEP's Rule 12(m) statement as the Rule requires, nor did it even touch on the bill of lading issue. *Id.* Rule 12(n) specifically states that "all material facts set forth in the statement required of the moving party [LEP] will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 12(n). In the past, this court has upheld the strict application of Rule 12(n). *See Appley v. West,* 929 F.2d 1176, 1179 (7th Cir.1991) (citations omitted). We do so here as well. Summary judgment on behalf of LEP was appropriate because Capitol failed to contest the fact that the bill of lading governing its shipment was a through bill of lading issued in a foreign country.[4] Accordingly, the district court

---

**3.** Local Rule 12 of the Northern District of Illinois was amended effective June 4, 1990. The amendment redesignated former Rule 12(*l*) as Rule 12(m) and former Rule 12(m) as Rule 12(n). Because the amendment did not change the language of these provisions, we refer to them by their amended designations rather than the ones the parties used.

**4.** We note that Capitol's neglect of this bill-of-lading issue continued on appeal. Although the district court clearly based its decision on the fact that the bill of lading's "through" status removed this transaction from the ambit of the Carmack Amendment, Capitol chose not to raise this issue on appeal either in its initial or reply brief. Instead, Capitol addressed its arguments to whether LEP is a "freight forwarder" within

was correct in granting summary judgment to LEP on the basis that the Carmack Amendment does not apply to this transaction.

### III.

The district court also granted LEP summary judgment on its limitation of liability defense to Capitol's breach of contract claim, deciding that a prior course of dealing between LEP and Capitol incorporated LEP's standard liability limitation into its bargain with Capitol. *See Capitol,* 750 F.Supp. at 865–68. Whether a course of dealing exists between parties to a transaction is a question of fact. *Gord Industrial Plastics Inc. v. Aubrey Mfg., Inc.,* 103 Ill.App.3d 380, 385, 59 Ill.Dec. 160, 164, 431 N.E.2d 445, 449 (5th Dist. 1982). A course of dealing is a "sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Ill.Rev. Stat. ch. 26, ¶ 1–205(1).[5] The parties' previous conduct may give "particular meaning to and supplement or qualify the terms of their later agreement." *Id.* ¶ 1–205(3). In this case, Capitol has failed to contest or refute any material factual issue concerning the extent or nature of its prior course of dealing with LEP. Accordingly, we agree with the district court that LEP is entitled to summary judgment on this issue as well.

Rather than arguing that it was not responsible for the misfortune of Capitol's machinery, LEP sought to limit its liability to Capitol to $150.00 pursuant to the limitation provision on the back of its invoice. LEP and Capitol both agree that this dispute arises from an oral agreement made when Capitol phoned LEP in November 1985 requesting that it arrange transportation of its machinery from Genoa to Chicago. Also undisputed is that neither party discussed the issue of liability during the phone conversation, R. 78, 81, thus making their oral agreement silent on this term. In support of its motion for summary judgment, LEP submitted its required Rule 12(m) statement, which incorporated two affidavits previously submitted, attesting to its business experience with Capitol. *See* R. 42, 76, 78, 83. Capitol does not contest the facts that it had done business with LEP since at least 1977 and had engaged in "hundreds of transactions" with LEP during that time. Neither does Capitol dispute that each invoice it received from LEP (and paid) contained the same term limiting LEP's liability to $50.00 per package. As noted earlier, we deem admitted these uncontested material facts. Local Rule 12(n). The only item that Capitol offers in opposition to LEP's motion is the affidavit of its president, Norman Singer, stating that neither he nor anyone at Capitol was aware of LEP's liability limitation. Giving full credit to this claim as we must on LEP's motion for summary judgment, we agree with the district court that, standing alone, Singer's affidavit is insufficient to create a genuine factual dispute over whether a course of dealing as to a liability limitation existed between LEP and Capitol.[6]

---

the meaning of the Carmack Amendment, an issue we need not, and do not, reach in this case. We have consistently refused to consider arguments withheld until the reply brief, let alone arguments not addressed even there. *See, e.g., Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990) (citations omitted). Consequently, Capitol has waived any challenge to the district court's decision regarding the inapplicability of the Carmack Amendment on the basis of the nature of the bill of lading.

5. The "course of dealing" provisions are found in article one of the Uniform Commercial Code (as adopted in Illinois), which means that it is not limited to the sale of goods but applies to all

commercial contracts and by analogy to noncommercial contracts as well. *See* Farnsworth, *Contracts* § 7.13.

6. We do not imply that actual awareness of a particular contractual term is never relevant to a course of dealing analysis. On the facts of this case, however, where Capitol's alleged unawareness stands alone in sharp contrast to LEP's detailed and unrefuted showing of the parties extensive business history spanning many years and hundreds of transactions, it is insufficient to create a genuine factual dispute over whether a course of dealing existed regarding LEP's liability limitation at the time of the transaction in question. Precisely when and

Instead of confronting its failure to contest or refute LEP's factual showing regarding the parties' business practice, Capitol recasts its disagreement with the district court's decision in the form of a legal argument. Capitol contends that the district court erroneously allowed LEP to modify unilaterally its unambiguous oral agreement with Capitol. Capitol's argument that LEP's limitation of liability term "unilaterally modified" the parties' agreement, however, misconceives the role a course of dealing between the parties may play. A course of dealing, rather than modifying an agreement, may become part of an agreement at its inception by "explicit provisions of the agreement or by tacit recognition." U.C.C. Official Comment 3. It reveals the "bargain of the parties in fact," *see* ¶ 1–201(3), informing the nature and the extent of the parties' obligation to each other. *See In re Elcona Homes Corp.*, 863 F.2d 483, 487 (7th Cir.1988) (a practice does not modify a contract but may be evidence of an obligation); *Kunststoffwerk Alfred Huber v. R.J. Dick, Inc.*, 621 F.2d 560, 564 (3d Cir.1980) (course of dealing may establish a limitation of damages term as part of the bargain of the parties in fact). Where, as here, an agreement is silent on a particular term, a course of dealing may fill the void. This is made clear by the fact that a course of dealing may "supplement or qualify" the terms of the parties' agreement as well as provide interpretive guidance on terms explicit in that agreement. *See Gord Industrial Plastics*, 59 Ill.Dec. at 164–65, 431 N.E.2d at 449–50 (course of dealing may supplement contract to supply a mold removal fee on which contract was silent); *see also* Farnsworth, *Contracts* § 7.13 (terms "supplement or qualify" indicate that a course of dealing may have an effect beyond mere interpretation of existing terms). Here, the parties' course of dealing supplemented their oral agreement which was silent as to LEP's liability to Capitol.[7]

In sum, Capitol's arguments cannot disguise the fact that LEP is entitled to summary judgment because Capitol has not overcome LEP's overwhelming evidence of the nature and extent of the parties' business practice. Commercial law, perhaps to a greater degree than other areas, is a "magic mirror"—a norm-taker as well as a norm-maker, reflecting commercial practice as well as engineering it. *See, e.g.,* Kermit L. Hall, *The Magic Mirror: Law in American History* (1989). LEP has made an affirmative and uncontested showing in support of its summary judgment motion that it has participated in the same type of commercial transaction, with the same party, under the same terms, since at least 1977. This transaction should be treated no different: the parties' prior course of dealing is fairly to be re-

---

under what circumstances the exchange of standard form contracts can create a course of dealing between two parties is a difficult issue we need not reach here. *See Step–Saver Data Systems, Inc. v. Wyse Technology,* 939 F.2d 91, 103–04 (3d Cir.1991); *Trans–Aire Int'l, Inc. v. Northern Adhesive Co.,* 882 F.2d 1254, 1262–63 (7th Cir.1989); *Schulze & Burch Biscuit Co. v. Tree Top, Inc.,* 831 F.2d 709, 714–15 (7th Cir.1987); *Barliant v. Follett Corp.,* 138 Ill.App.3d 756, 91 Ill.Dec. 677, 483 N.E.2d 1312 (1985).

7. Capitol's argument that *Latex Glove Co. v. Gruen,* 146 Ill.App.3d 868, 100 Ill.Dec. 488, 497 N.E.2d 466 (1st Dist.1986), requires that LEP's summary judgment be reversed is similarly flawed. Latex Glove's complaint against Gruen (a printer) for breach of contract to produce certain catalogues was dismissed for the failure to state a claim. *Latex Glove,* 100 Ill.Dec. at 493, 497 N.E.2d at 471. Latex Glove had also asserted that, according to trade usage, its bar-

gain with Gruen included certain byproducts of the catalogue's production as well as the catalogues themselves. In seeking to establish this contract between itself and Gruen, Latex Glove pointed to various price quotations and discussions. But the court noted "that non-parties both made and accepted these various offers." *Id.* at 491, 497 N.E.2d at 469. Thus, Latex Glove's action was dismissed because it did not adequately allege any bargain between itself and Gruen, not because trade usage could not be used to establish the contours of that bargain. *Id.* at 491–93, 497 N.E.2d at 469–71. Because no underlying contract existed, the court was constrained to interpret Latex Glove's trade usage argument as an attempt to ask the court to "impose a new obligation instead of filling a gap in the contract terms." *Id.* at 492, 497 N.E.2d at 470. *Latex Glove* is thus distinct from this case in which the parties are seeking to establish the contours of an underlying agreement.

garded as establishing LEP's liability limitation as part of their bargain.

AFFIRMED

RIPPLE, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's conclusion with respect to the applicability of the Carmack Act. I respectfully decline to join the majority's conclusion that no genuine issue of fact remains as to whether the prior course of dealing between LEP and Capitol incorporated LEP's standard liability limitation into its bargain with Capitol.