COPE, Judge
(specially concurring).
I am obliged to concur in light of this court’s decision in Harvest International, Inc. v. Tropical Shipping and Construction Co., Ltd., 644 So.2d 112 (Fla. 3d DCA 1994). In my view, however, Harvest International is wrongly decided.
I.
Plaintiff Precision Cutting Services, Inc. bought goods in Costa Rica and contracted with King Ocean Central America, S.A., an ocean carrier, to transport the goods. Kong Ocean issued a through bill of lading for shipment by sea to Miami, and then by motor carrier to Little Rock, Arkansas, the final destination. The container of goods was unloaded in Miami and picked up by a motor carrier for transportation to Little Rock. The motor carrier issued its own bill of lading. The motor carrier took the container to a Miami freight yard for temporary storage, and it was stolen.
Precision Cutting sued King Ocean, among others, arguing that King Ocean was liable to Precision Cutting under the Carmack Amendment, 49 U.S.C. § 14706,[3] and alternatively under the United States Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. § 1300. The trial court ruled that King Ocean, the ocean carrier, was covered by COGSA, not the Carmack Amendment. COGSA carries a one-year statute of limitations. 46 U.S.C.App. § 1303(6). Since Precision Cutting filed suit more than one year after the loss, the trial court found that the claim against King Ocean was time barred and entered summary judgment for King Ocean.
Precision Cutting has appealed, arguing that King Ocean is covered by the Carmack Amendment, not COGSA. Precision Cutting seeks to take advantage of the Carmack Amendment’s longer statute of limitations.
II.
Were it not for this court’s decision in Harvest International, the trial court ruling should be affirmed.
A leading treatise has summarized the applicable rules as follows.
The Carmack Amendment covers: the liability of railroads, motor carriers, and, freight forwarders under receipts and bills of lading....
The liability of water carriers for cargo loss and damage was not and is not covered by the Carmack Amendment provisions, but is determined by the bill of lading issued by the carrier by water. Liability of carriers of goods by sea is governed by the U.S. Carriage of Goods by Sea Act.
Saul Sorken, Goods in Transit § 1.19, at 1-126 to 1-127 (1996) (emphasis added; footnote omitted). The dividing lines are clear. The ocean carrier (King Ocean) is covered by COGSA, not the Carmack Amendment. The trial court ruling was correct as a matter of statutory interpretation.
III.
Unfortunately, however, the decision in Harvest International reached the opposite conclusion. It did so on the basis of a misreading of certain federal decisions.
The Harvest International opinion states: The Carmack Amendment imposes strict liability on certain carriers for the loss of goods. The Carmack amendment does not apply “to shipments by water, rail or motor carriers from a foreign country to the *827 United States, ... unless a domestic segment of the shipment is covered by a separate domestic bill of lading.” Capitol Converting Equip., Inc. v. LEP Transp., Inc., 965 F.2d 391, 394 (7th Cir.1992) (citing Swift Textiles, Inc. v. Watkins Motor Lines, Inc., 799 F.2d 697, 701 (11th Cir.1986)).
644 So.2d at 113. Harvest International interpreted the cited federal cases to mean that if (a) the ocean carrier issued a through bill of lading which includes land transportation from the United States port to the final destination in the United States; and (b) the land carrier issued a separate bill of lading covering the United States overland leg of the journey; and (c) the loss occurred during the overland United States leg; then (d) the ocean carrier is liable under the Carmack Amendment. 644 So.2d at 113.
In so holding, Harvest International misconstrued the federal decisions, Capitol Converting and Swift Textiles. What was at issue in the federal cases was the liability of the United States carrier, not the ocean carrier.
The first case relied on by Harvest International was Sunft Textiles, 799 F.2d 697. The issue in Sunft Textiles was whether the Carmack Amendment applied to a Georgia intrastate trucker who handled the final leg of the international journey, where the Georgia trucker never crossed state lines.
In Sunft Textiles, Swift was an American company which bought goods from a Swiss manufacturer. 799 F.2d at 698. The goods were shipped by ocean carrier to Charleston, S.C., and trucked to Savannah, Georgia, for temporary storage. Swift’s customs broker then hired the defendant Watkins Motor Lines, a Georgia trucker, to move the containers from Savannah, Georgia, to La-Grange, Georgia, which was the final destination. Id. There was an accident during Watkins’ Savannah-to-LaGrange part of the trip, and Swift sued Watkins.
The legal issue was whether Watkins, a Georgia intrastate trucker, was covered by the Carmack Amendment, given that Watkins’ contract only covered within-Georgia transportation — an intrastate shipment. Construing the then-existing version of the Carmack Amendment, the Swift Textiles court said:
The Carmack Amendment applies when the ICC has jurisdiction over the shipment in question, 49 U.S.C. § 11707(a). Among the shipments over which the ICC has jurisdiction are shipments “between a place in ... the United States and a place in a foreign country to the extent the transportation is in the United States ....” 49 U.S.C. § 10521(a)(1)(E) (the “continuation of foreign commerce” provision).
[[Image here]]
Thus, the critical inquiry is not whether the domestic leg of the shipment crossed a state border but rather it is whether the domestic leg of the shipment was intended to be part of a larger shipment originating in a foreign country....
We therefore hold that when a shipment of foreign goods is sent to the United States with the intention that it come to a final rest at a specific destination beyond its port of discharge, then the domestic leg of the journey (from the port of discharge to the intended destination) will be subject to the Carmack Amendment as long as the domestic leg is covered by separate bill or bills of lading.
Id. at 699, 701 (emphasis added).
The significance of the through bill of lading becomes clear. It reveals that the entire journey for this shipment involved interstate and foreign commerce. Although Watkins’ final leg was solely within Georgia, Watkins had nonetheless undertaken responsibility for carriage of goods which had moved in interstate and foreign commerce. This was sufficient to bring Watkins’ within-Georgia journey under the coverage of the Carmack Amendment.
Swift Textiles is quite clear that the Car-mack Amendment applies only to the domestic (United States) carrier on the United States leg of the journey, i.e., Watkins. Swift Textiles did not impose liability on the ocean carrier, which was not a party to the appeal.
The Harvest International panel also relied on the federal Capitol Converting deci *828 sion, 965 F.2d 391. That reliance was also misplaced. In Capitol Converting, Capitol purchased equipment in Italy and hired a freight forwarder, LEP Transport, Inc., to arrange transportation from Italy to Chicago, Illinois. The ocean shipment was unloaded in Norfolk, Virginia, and for unexplained reasons was sold by the U.S. Customs Service. 965 F.2d at 393.
Capitol sued LEP, its United States freight forwarder, for loss of the shipment. Freight forwarders are covered by the Car-mack Amendment. Relying on Swift Textiles, the Capitol Converting court said:
The Carmack Amendment is an amendment to the Interstate Commerce Act that imposes liability on certain carriers for the loss of goods. 49 U.S.C. § 11707; ... It applies to “a common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subehapter I, II, or IV of chapter 105 of this title.” 49 U.S.C. § 11707. This jurisdiction does not extend to shipments by water, rail or motor carriers from a foreign country to the United States, see 49 U.S.C. §§ 10501, 10521, 10561, unless a domestic segment of the shipment is covered by a separate domestic bill of lading. Swift Textiles, Inc. v. Watkins Motor Lines, Inc., 799 F.2d 697, 701 (11th Cir.1986), cert. denied, 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987). A bill of lading issued in a foreign country to govern a shipment throughout its transportation from abroad to its final destination in the United States is termed a “through” bill of lading. Because such a “through” bill of lading includes no separate domestic segment as described above, the Carmack Amendment is inapplicable. See Swift Textiles, 799 F.2d at 701;_
965 F.2d at 394 (emphasis added; some citations omitted). Since no domestic (United States) bill of lading had ever been issued for the United States leg of the international journey, the Capitol Converting court held that the Carmack Amendment did not apply to the United States defendant.
The Capitol Converting court, like Swift Textiles, was concerned solely with whether the United States defendant was liable for loss under the Carmack Amendment where the loss occurred during the United States leg of an international shipment. In Capitol Converting, the ocean carrier was not a defendant, see id. at 393, and Capitol Converting in no way authorizes application of the Carmack Amendment to the ocean carrier.[4]
In sum, the cases relied on by Harvest International were examining the Carmack Amendment coverage of United States defendants. The through bill of lading issued by the ocean carrier was relevant in order to determine whether the shipment carried within the United States was a continuation of foreign commerce. Neither federal case held that an ocean carrier is covered by the Carmack Amendment.
In support of its claim that an ocean carrier is covered by the Carmack Amendment, Precision Cutting also cites a federal district court decision, Canon U.S.A., Inc. v. Nippon Liner System, Ltd., 1994 AMC 348, 1992 WL 82509 (N.D.Ill.1992). That case does not support Precision Cutting’s position. In Canon U.S.A., the ocean carrier contractually agreed to .be liable for any damage caused by United States carriers handling the United States leg of the international shipment. Id. at 353. The final leg of the journey was handled by an Illinois trucker who carried the goods from Chicago, Illinois, to Wood Dale, Illinois. During the final leg, there was an accident and resulting damage to the shipment. Relying on Swift Textiles, the federal district court held that the United States trucker was covered by the Carmack Amendment because the final, within-Illinois leg of the journey was a continuation of foreign commerce. Id. at 358. The court denied the Illinois trucker’s motion for summary judgment on the Carmack issue. Id. Since the ocean carrier had agreed to be contractually liable if the Illinois shipper was found to be negligent, the court ruled that *829 the ocean carrier was potentially liable under the Carmack Amendment. Id.
Canon U.S.A. stands for the proposition that the ocean carrier can by contract make itself vicariously liable for the United States carrier’s liability under the Carmack Amendment.[5] Canon U.S.A. does not hold that an ocean carrier has statutory liability under the Carmack Amendment.[6]
The Harvest International opinion held that the Carmack Amendment apples to an ocean carrier so long as there is a through bill of lading and a separate bill of lading for the domestic leg of the international shipment. 644 So.2d at 112. For the reasons explained above, that ruing is incorrect.
III.
We must folow Harvest International until such time as it is revisited by this court en banc or by the Florida Supreme Court. Consequently, I am oblged to concur.
SCHWARTZ, C.J., concurs.

. Formerly 49 U.S.C. § 11707 (prior to Jan. 1, 1996).

. As previously mentioned, the Carmack Amendment applies to freight forwarders. Saul Sorken, Goods in Transit § 1.19, at 1-126. In Capitol Converting the parties disagreed on whether defendant LEP met the statutory definition of a freight forwarder. 965 F.2d at 394 n. 4. The court found it unnecessary to reach that issue.

. I agree with the majority opinion's observation that, "In its bill of lading, King Ocean agreed to be responsible for any loss or damage to the goods while in the custody of the inland carrier." Maj. op. at 825 (footnote omitted). By contract King Ocean has agreed to be vicariously liable for loss of the goods while in the hands of the inland carrier. Since the inland carrier in this case is subject to the Carmack Amendment, King Ocean has in effect subjected itself to Carmack Amendment liability for the United States leg of the international journey.
The problem is that the King Ocean bill of lading does not extend the statute of limitations. Consequently, Precision Cutting's lawsuit had to be filed within the one-year limitation period of COGSA.

. On one issue the Canon U.S.A. district court decision has been overruled sub silentio by the Seventh Circuit decision in Capitol Converting. The Canon U.S.A. court expressly disagreed with the holding of the district court in Capitol Converting that in order to create Carmack Amendment liability the domestic leg of the journey must be covered by a separate bill of lading. 1994 AMC at 358, questioning Capitol Converting Equipment v. Lep Transport, 750 F.Supp. 862 (N.D.Ill.1990). However, the Capitol Converting decision was affirmed by the Seventh Circuit. 965 F.2d at 394-95. The Canon U.S.A. decision has therefore been overruled to the extent of any inconsistency with Capitol Converting.