*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0396P (6th Cir.)
File Name: 03a0396p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

AMERICAN ROAD SERVICE
COMPANY,
    *Plaintiff-Appellant,*

*v.*

CONSOLIDATED RAIL
CORPORATION,
    *Defendant-Appellee.*

No. 02-1475

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-74640—Victoria A. Roberts, District Judge.

Argued: September 9, 2003

Decided and Filed: November 6, 2003

Before: MOORE and GILMAN, Circuit Judges; MILLS,
District Judge.*

---

*The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

## COUNSEL

**ARGUED:** David A. Byers, Eden Prairie, Minnesota, for Appellant. Jonathan F. Ball, JANSSEN & KEENAN, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** David A. Byers, Eden Prairie, Minnesota, for Appellant. Paul D. Keenan, JANSSEN & KEENAN, Philadelphia, Pennsylvania, Dirk H. Beckwith, FOSTER, SWIFT, COLLINS & SMITH, Farmington Hills, Michigan, for Appellee.

## OPINION

RICHARD MILLS, District Judge. American Road Services Company ("American") filed a subrogation action against Consolidated Rail Corporation ("Conrail") seeking compensation for damaged property.

The district court concluded that American's complaint was untimely and entered summary judgment for Conrail.

We AFFIRM.

### I. FACTS AND PROCEDURAL BACKGROUND

Larry Krueger, a Ford Motor Company ("Ford") employee, was stationed on an overseas work assignment in the Czech Republic. At the conclusion of his stay, his household goods and personal belongings were packed, crated, and placed in a container by Interdean, an international moving company, and shipped to port at Bremerhaven, Germany. Mark VII, an international transportation company, issued a bill of lading to Interdean and forwarded the goods overseas via Maersk

Sea Lines to port at Newark, New Jersey. Conrail transported Krueger's goods by rail to their final destination in Detroit, Michigan. Two days later, Conrail employees discovered that the 45-foot container holding Krueger's goods had been broken into and set on fire. American, an affiliate of Ford, paid Krueger $182,587.60 for his loss.

On September 23, 1998, American notified Conrail of its intent to pursue subrogation and on January 25, 1999 gave notice of the final amount of the claim. Conrail denied the claim on June 8, 1999.[1] On October 18, 2000, American filed suit in district court alleging a negligence claim and a claim pursuant to the Carmack Amendment.

On March 13, 2002, the district court entered summary judgment in favor of Conrail because American's complaint was untimely.

On appeal, American claims that the district court erred when it failed to provide American notice and an opportunity to respond before entering summary judgment *sua sponte*. American also claims genuine issues of material fact precluded summary judgment. Finally, American argues that the district court erred when it considered testimony of a witness who was not disclosed in accordance with Rule 26 of the Federal Rules of Civil Procedure.

## II. ANALYSIS

### A. *Sua Sponte*

American claims that the district court's order granting judgment in favor of Conrail was inappropriate because the time for filing dispositive motions had expired. American

---

[1] Conrail denied the claim because American failed to provide a more explicit description of its claim.

claims that the court entered summary judgment *sua sponte* and did not allow American an opportunity to respond.

"The clearly established rule in this circuit is that a district court must afford the party against whom *sua sponte* summary judgment is to be entered ten days notice and an adequate opportunity to respond." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984). "Noncompliance with the time provision of the rule deprives the court of authority to grant summary judgment, unless the opposing party has waived this requirement, or there has been no prejudice to the opposing party by the court's failure to comply with this provision of the rule." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (quoting *Kistner v. Califano*, 579 F.2d 1004, 1006 (6th Cir. 1978)).

At the final pretrial conference, according to both parties, the district court requested that the parties brief certain dispositive issues. At the end of Conrail's Brief, Conrail requested "the entry of judgment as a matter of law." American responded to the issues raised and asked the court to deny Conrail's request for judgment.

American therefore had notice, was aware of the relevant issues, had an opportunity to respond and did in fact respond to Conrail's request for judgment as a matter of law. Accordingly, the Court rejects American's characterization of the judgment in this case as *sua sponte*.[2]

### B. *Genuine Issue of Material Fact*

The district court found that the Mark VII bill of lading was a through bill of lading and that the Carmack Amendment's

---

[2] Even if it were possible to characterize the grant of summary judgment as *sua sponte*, American suffered no prejudice, as is evident in Section B of this opinion.

two-year period of limitation for filing a civil action therefore did not apply. The court then examined the Mark VII bill of lading to determine whether the time to commence a suit was limited by contract. Section XVIII of the Mark VII bill of lading states, "Carrier shall be discharged from all liability for loss of damage to goods unless suit is brought within 9 months after delivery of the goods." Based on that language, the district court found American's complaint, filed almost two years after the fire in the rail yard, was untimely.

American argues on appeal that the Carmack Amendment applies to this case and that a genuine issue of material fact precluded summary judgment. We review a district court's grant of summary judgment *de novo. Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003).

The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887 and addresses the liability of common carriers for goods lost or damaged during a shipment over which the Interstate Commerce Commission ("ICC") has jurisdiction. *Capitol Converting Equipment, Inc. v. LEP Transport, Inc.*, 965 F.2d 391, 394 (7th Cir. 1992). The Amendment requires, among other things, that a carrier transporting property issue a bill of lading to the shipper, and makes the carrier liable to the one entitled to recover under the bill of lading for loss of or injury to the property.

"A bill of lading issued in a foreign country to govern a shipment throughout its transportation from abroad to its final destination in the United States, is termed a 'through' bill of lading." *Capitol*, 965 F.2d at 394. The ICC's jurisdiction does not extend to a shipment under a through bill of lading unless a domestic segment of the shipment is covered by a separate domestic bill of lading. *See* 49 U.S.C. § 10501; *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 701 (11th Cir. 1986); *Capitol*, 965 F.2d at 394; *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 703 (4th Cir. 1993).

Determining whether a shipment is governed by a through bill of lading is a question of fact. *Capitol*, 965 F.2d at 394. In *Capitol*, LEP Transport was hired by Capitol to arrange for the transportation of machinery from Italy to Chicago. The machinery never arrived and Capitol sued LEP under the Carmack Amendment. The district court held that the shipment was governed by a through bill of lading, making the Carmack Amendment inapplicable, because the bill of lading was issued in Italy, showed Chicago as the place of delivery, was prepaid and was not followed by a separate, domestic bill of lading. *Id*.

Here, the district court concluded that the shipment was covered by a through bill of lading because (1) the final destination was included in the bill of lading issued by Mark VII to Interdean; (2) the freight was prepaid for the entire shipment to Detroit; and (3) no separate bill of lading was issued for the trip from Newark to Detroit.

American disputes the accuracy of the district court's findings. Specifically, American claims there is evidence Conrail issued a domestic bill of lading. That evidence is found in Conrail's claim notes, which state that "this document does not constitute a claim within the meaning of section 2(b) of bill of lading contract." American states that a "section 2(b)" is not listed in the bills of lading issued by Maersk or Mark VII and argues "[w]hether there is a third Conrail bill of lading that also governs the transaction is a question of fact that precludes summary judgment."

To support a claim under the Carmack Amendment, American must present some proof that a domestic bill of lading was issued. Speculation, unsupported by facts in the record, is insufficient to create a genuine issue of material fact and falls short of what is required to survive summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (holding that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Without evidence to the contrary, the Court agrees with the district court's finding that the Mark VII bill of lading was a through bill of lading. Such a finding renders the Carmack Amendment inapplicable to the shipment at issue.[3]

As a result, the Mark VII bill of lading's nine-month period of limitation controls and American's negligence claim, filed almost two years after the goods were destroyed by fire, was too late.

AFFIRMED.

---

[3] American raises another issue on appeal: whether the district court abused its discretion when it considered the deposition testimony of Maersk's claims manager, Massoud Messkoub. American argues that the testimony was inadmissible because Conrail failed to disclose Messkoub's identity until nine months after the witness disclosure deadline. The district court relied on Messkoub's testimony to conclude that American's complaint was untimely even if the Carmack Amendment applied. Because the Court has concluded the Carmack Amendment is inapplicable, a ruling on whether Messkoub's testimony was admissible is unnecessary.