[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14988

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 7, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00331-CV-J-25-HTS

ALTADIS USA, INC., for the
use and benefit of FIREMAN'S
FUND INSURANCE COMPANY, its
subrogee,

                                        Plaintiff-Cross-
                                        Defendant-Appellant,

versus

SEA STAR LINE, LLC,

                                        Defendant-Cross
                                        Defendant-Cross-
                                        Claimant-Appellee
                                        Cross-Appellant,

AMERICAN TRANS-FREIGHT (ATF), INC.,

                                        Defendant-Cross-
                                        Claimant-Cross-
                                        Defendant-Appellee-
                                        Cross-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 7, 2006)**

Before ANDERSON, FAY and SILER,[*] Circuit Judges.

ANDERSON, Circuit Judge:

In this case involving a maritime contract, we review the appellant's claim

that the district court erred when it found appellant's claim time barred. Appellant

argues that the district court erred in holding that the Carmack Amendment, and its

two-year statute of limitations, was inapplicable to this case. We also review the

district court's denial of summary judgment in two cross-claims brought by one

appellee against the other appellee. After careful consideration, we affirm the

district court's order with regard to appellant's Carmack Amendment claim, affirm

the district court's denial of summary judgment on one cross-claim, and vacate and

remand the remaining cross-claim for reconsideration by the district court.

## I. FACTS

_____

[*] Honorable Judge Eugene Edward Siler, Jr., United States Court of Appeals for the Sixth Circuit.

In March of 2003, Plaintiff-Appellant Altadis ("**Altadis**") purchased a shipment of cigars and cigar bands from Congar International, a company located in Cayey, Puerto Rico. The shipment, containing 2478 cartons of cigars and 20 cartons of bands, was placed in a container and booked with Defendant-Appellee Sea Star Line ("**Sea Star**") for shipment to Altadis in Tampa, Florida.[1] The cigars and cigar bands were to be shipped from Puerto Rico to the port in Jacksonville, Florida. From there, they were to be transported overland to Tampa, Florida where Altadis would receive them. A single through bill of lading was issued in Puerto Rico and covered the entire shipment including the ocean voyage to Jacksonville and the overland transportation from Jacksonville to Tampa.

On March 17, 2003, the ship arrived in Jacksonville and Defendant-Appellee American Trans-Freight ("**ATF**") took possession of the cargo as the inland carrier responsible for delivering the shipment to Altadis in Tampa. According to the Transportation Service Agreement (TSA) between Altadis and Sea Star, ATF was

---

[1]     In April of 2002, Altadis and Sea Star entered into a Transportation Service Agreement ("**TSA**") which required Sea Star to pay Altadis for any damages for a lost container. The General Rules of the TSA also state that Sea Star will issue a transportation bill of lading and export declaration for each shipment, and that the "terms and conditions printed upon the Bill of Lading shall govern all such shipments." The TSA stated that the Bill of Lading would govern the relationship between the carrier and shipper and would be subject to the provision of the Carriage of Goods by Sea Act ("**COGSA**"). It also included "inland carriers" as part of the definition of "Carrier" in the agreement, and extended the benefits of the TSA to "all parties performing services for or on behalf of Carrier or the Vessel as employees, servants, agents or contractors, including without limitation . . . inland carriers."

3

engaged to continue the carriage under the same multimodal bill of lading.[2] At some point after receiving the container, ATF's driver parked the truck which contained the cigar container in the front driveway of a closed gas station. He left the vehicle overnight. When he returned the next day, March 18, to continue the trip to Tampa, the container was gone. It was found empty on March 25, 2003, in South Dade County, Florida.

Altadis sued Sea Star and ATF in Florida state court under various theories of liability. The case was removed to federal court soon afterward. Both Sea Star and ATF filed affirmative defenses (based on the statute of limitations). Sea Star filed a cross-claim against ATF asserting common law contribution and indemnity and also breach of contract.[3] Sea Star then filed a series of motions for summary judgment, all of which claimed that Altadis had failed to timely file its suit within one year after the date the container should have been delivered. This one-year statute of limitations was provided for both in the bill of lading and in the Carriage

---

[2]     Sea Star and ATF had also signed an agreement–a Uniform Intermodal Interchange and Facilities Access Agreement ("**UIIA**"). The UIIA stated that Sea Star would, from time to time, hire ATF to transport to various locations containers that Sea Star had transported to Jacksonville by ocean carrier under an intermodal through bill of lading. The UIIA governed the terms of the agreement between Sea Star and ATF, including ATF's agreement to indemnify and hold harmless Sea Star in the event of damage or loss caused by ATF.

[3]     ATF also filed a cross-claim against Sea Star, but the district court dismissed it and ATF does not appeal.

of Goods by Sea Act (COGSA). The bill of lading also stated that "the relationship between Carrier [Sea Star and ATF] and Shipper [Altadis] . . . shall have effect subject to the provisions of the United States Carriage of Goods by Sea Act." ATF filed a similar motion for summary judgment.

The district court granted summary judgment for ATF as to the claims by Altadis but it did not initially rule on Altadis' claims against Sea Star or the cross-claims by Sea Star against ATF. Later, the court granted Sea Star's motion for summary judgment as to the claims by Altadis and denied Sea Star's motion for summary judgment on its cross-claims against ATF (effectively ruling that Sea Star's cross-claims were without merit). The district court then ordered the clerk to close the case.

Altadis appeals from the district court order of summary judgment for Sea Star and ATF. Altadis' appeal is based on the Carmack Amendment, which states that a carrier cannot provide, by rule or contract, for a statute of limitations of less than two years for bringing a civil action. Altadis argues that the Carmack Amendment, with its two-year minimum statute of limitations, governs the case, and that the one-year statute of limitations relied upon by Sea Star and ATF, and used by the court to grant summary judgment, is inapplicable. Sea Star seeks review of the district court's denial of its motion for summary judgment on its two

cross-claims brought against ATF: one under a common law theory of contribution and indemnity, and another alleging breach of contract.

## II. DISCUSSION

The district court granted summary judgment to ATF and Sea Star on Altadis's complaint based on the language contained in the bill of lading issued by Sea Star. The district court relied upon two grounds: (1) the bill of lading issued was a "through" bill of lading – or one issued to the final destination – and therefore all carriers, including land carriers, are subject to its terms and (2) the bill of lading specifically incorporated COGSA into the agreement, and therefore COGSA and its one-year statute of limitations, not the Carmack Amendment, applies to the case.

Using the date of the second amended complaint filed by Altadis and the date of the alleged theft or loss of the cigar container, the district court agreed with ATF and Sea Star that more than one year had passed between the loss to Altadis and the service of process on ATF and Sea Star.[4] The court then quoted from the language of the bill of lading, which said that suits for loss or damage to cargo

---

[4] Altadis does not challenge the district court's finding that more than one year has passed. Altadis argues only that the applicable statute of limitations is the Carmack Amendment's minimum two-year statute, not the one-year statute provided for in the bill of lading and COGSA.

must be brought "within one (1) year after delivery of the Goods or the date the Goods should have been delivered," and that no suit will be deemed to have been brought unless "service of process on Carrier or the Vessel has been effected." Since Altadis did not serve process on ATF until April 13, 2004 (and the loss occurred on March 25, 2003), the district court found that ATF was entitled to summary judgment.[5]

On appeal, Altadis argues that the Carmack Amendment, and its minimum two-year statute of limitations, applies, and not the one-year statute of limitations provided for in the bill of lading and COGSA. Altadis suggests that the Secretary of Transportation and Surface Transportation Board have jurisdiction of ATF's carriage on the overland (Jacksonville to Tampa) leg,[6] and that the Carmack Amendment's minimum two-year statute of limitations is applicable.[7]

---

[5] The district court's detailed order, which included its legal analysis regarding the statute of limitations, was applicable only to ATF's motion for summary judgment. Docket 86. In a second, subsequent order, the court made a similar ruling on Sea Star's motion for summary judgment "[b]ased upon [the] Court's prior Order . . . and the analysis contained therein." Docket 87.

[6] 49 U.S.C. § 13501(1)(C) indicates that the Secretary and Board have jurisdiction over transportation by motor carrier between a place in "the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States."

[7] 49 U.S.C. § 14706(e) provides for the minimum two-year statute of limitations.

On the other hand, Sea Star and ATF argue that the instant carriage is maritime commerce governed by a maritime contract. They argue that the governing law is the bill of lading and COGSA, both of which provide for a one-year statute of limitations.[8]

The question with which we are faced is straightforward: where a single bill of lading covers a shipment from Puerto Rico to Tampa (including the ocean leg to Jacksonville and the overland leg from Jacksonville to Tampa), does the Carmack Amendment and its two-year minimum statute of limitations apply to a loss occurring on the overland leg, or does the one-year statute of limitations provided for in the bill of lading and COGSA apply?

The case law has established that the Carmack Amendment does not apply to a shipment from a foreign country to the United States (including an ocean leg and overland leg to the final destination in the United States) unless the domestic, overland leg is covered by a separate bill of lading. The Sixth Circuit so held in American Road Service Co. v. Consolidated Rail, 348 F.3d 565, 568 ( 6th Cir. 2003) (holding that the Carmack Amendment and its two-year minimum statute of limitations does not apply to a shipment from a foreign country governed by a

---

[8] 46 U.S.C. § 1303(6) provides that the carrier "shall be discharged from all liability in respect of loss or damage unless suit is brought within one year." The bill of lading contains a similar provision.

through bill of lading, "unless a domestic segment of the shipment is covered by a separate domestic bill of lading." ). In Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 703 (4th Cir. 1993), the court held that the Carmack Amendment does not apply to shipments from a foreign country to the United States "unless a domestic segment of the shipment is covered by a separate bill of lading." The Seventh Circuit is in accord; see Capital Converting Equipment v. LEP Transport, 965 F.2d 391, 394 ( 7th Cir. 1992) (holding that the Carmack Amendment does not apply to a shipment from a foreign country to the United States covered by a through bill of lading, "unless a domestic segment of the shipment is covered by a separate domestic bill of lading.").[9] Dicta in our own circuit is consistent with the Fourth, Sixth and Seventh Circuits. In Swift Textiles, Inc. v. Watkins Motor Lines, Inc., 799 F.2d 697 (11th Cir. 1986), we held that the Carmack Amendment was applicable to a shipment from a foreign country where the loss occurred during the domestic, overland portion of the shipment (between the United States port and the final destination in the United States), and where the domestic overland portion of

---

[9] Only the Ninth Circuit has reached a different result. See Neptune Orient Lines v. Burlington N. and Santa Fe, 213 F.3d 1118, 1119 (9th Cir. 2000) ("in the past we have held that [the Carmack Amendment] applies to separate inland bills of lading for shipments to or from overseas ports .... The language of the statute also encompasses the inland leg of an overseas shipment conducted under a single, 'through' bill of lading ... to the extent that the shipment runs beyond the dominion of the Carriage of Goods by Sea Act."). The Ninth Circuit's holding and discussion is limited to a single sentence, cites no authority for its position, and does not discuss the opposing case law.

the shipment was covered by a separate, domestic bill of lading. We held "that when a shipment of foreign goods is sent to the United States with the intention that it come to final rest at a specific designation beyond its port of discharge, then the domestic leg of the journey (from the port of discharge to the intended destination) will be subject to the Carmack Amendment as long as the domestic leg is covered by a separate bill or bills of lading." Id. at 701.

The notion that a separate, inland bill of lading is a prerequisite to the application of the Carmack Amendment originated from a discussion in an earlier case before the Supreme Court. In Reider v. Thompson, 339 U.S. 113, 70 S.Ct. 499 (1950), a shipment of goods originating in Buenos Aires was sent over water to New Orleans. In New Orleans, a new and separate bill of lading was issued pursuant to which the goods were carried to Boston, where they arrived in damaged condition. The plaintiff sued, claiming the Carmack Amendment applied, and the Supreme Court accepted the plaintiff's argument. Reider, 399 U.S. at 118-19, 70 S.Ct. at 502-03. The Court explained:

> The test is not where the shipment originated, but where the obligation of the carrier as receiving carrier originated. Thus it is not significant that the shipment in this case originated in a foreign country, since the foreign portion of the journey terminated at the border of the United States. The obligation as receiving carrier originated when respondent issued its original through bill of lading at New Orleans. That contract of carriage was squarely within the provisions of the statute.

10

<u>Id.</u> at 117, 70 S.Ct. at 502 (citations omitted).  As noted above, subsequent cases,

citing <u>Reider</u>, have held that a separate bill of lading for the domestic leg of an

international shipment must be issued in order for the Carmack Amendment to

apply.

Altadis does not dispute that it agreed to the Transportation Service

Agreement (TSA) with Sea Star, or that the TSA specifically explains that the

terms and conditions provided in the bill of lading will govern any dispute.  Altadis

also does not dispute that this was a "through" bill of lading, which was intended to

cover the entire voyage from Puerto Rico to Tampa, Florida.[10]   Finally, Altadis

does not dispute that the bill of lading for the cigar shipment incorporates COGSA

and its one-year statute of limitations.[11]  Rather, Altadis acknowledges that the one-

year statute of limitations included in the bill of lading applies to Sea Star as the

ocean carrier, but argues that the inland, domestic leg of the trip during which ATF

took control of the containers is subject to the Carmack Amendment, which bars

---

[10]       Appellant's brief on appeal says, "Upon taking delivery of [the cigar] container. . . the Appellee, Sea Star Line, LLC, loaded it on board its vessel El Yunque, issued its Bill of Lading. . . and proceeded with the loaded container to Jacksonville, Florida for further transportation overland by truck to the Appellant in Tampa, Florida. . . That said Bill of Lading is a Multimodal Bill of Lading covering the entire transportation from [Puerto Rico] to the Plaintiff in Tampa, Florida."

[11]       The several provisions of the bill of lading clearly set forth: that COGSA provides the governing law (paragraph 1); that a one-year statute of limitations shall apply (paragraph 27); and that the same shall apply not only to Sea Star but also to ATF (paragraphs 2(a) and 22). Altadis not dispute these provisions of the bill of lading.

statutes of limitations less than two years.  Because the Carmack Amendment is a federal statute, Altadis argues that it "preempts and supercedes all other laws and contracts having less than statutory rank including the Sea Star Bill of Lading which is governed by Common Law."

In support of its argument Altadis attempts to distinguish the above-cited cases.  Altadis argues that the cases do not require a separate bill of lading, but require only a domestic bill of lading.  Altadis also points out that the cases all involved foreign shipments, whereas the instant case involves an ocean shipment from a possession of the United States, Puerto Rico.

We reject Altadis' attempt to distinguish the case law.  Contrary to its argument, the cases do in fact require a separate bill of lading.  See American Road Service Co. v. Consolidated Rail, 348 F.3d 565, 568 (6th Cir. 2003) (the Carmack Amendment does not apply "to a shipment under a through bill of lading unless a domestic segment of the shipment is covered by a separate domestic bill of lading.") (emphasis added); Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 703 (4th Cir. 1993) (same); Capital Converting Equipment v. LEP Transport, 965 F.2d 391, 394 (7th Cir. 1992) (same); Swift Textiles Inc. v. Watkins Motor Lines, 799 F.2d 697, 701 (11th Cir. 1986) ("The domestic leg of the journey ... will be subject

12

to the Carmack Amendment as long as the domestic leg is covered by a separate bill or bills of lading.").[12]

We also believe that Altadis' position is in tension with the opinion of the Supreme Court in Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 125 S.Ct. 385 (2004). The case was "a maritime case about a train wreck." Id. at 18, 125 S.Ct. at 390. There was a shipment of machinery from Australia to Huntsville, Alabama, pursuant to a through bill of lading. Id. at 19, 125 S.Ct. at 390. The Court held that the bill of lading was a maritime contract, holding: "so long as a bill of lading requires a substantial carriage of goods by sea, its purpose is to effectuate maritime commerce – and thus it is a maritime contract." Id. at 27, 125 S.Ct. at 395. The Court emphasized the importance of the uniformity of the general maritime law, and accordingly the need to reinforce the liability regime Congress established in COGSA, and the apparent purpose of COGSA to facilitate efficient contracting in contracts for carriage by sea. Id. at 28-29, 125 S.Ct. at 395-96. The Court also noted that a "single Himalaya Clause can cover both sea and land

---

[12]     Although it is true that Puerto Rico is a possession of the United States, that fact does not serve to distinguish the cited cases involving shipments from foreign ports. The language which Altadis suggests supports the applicability of the Carmack Amendment to shipments to the United States from United States possessions – 49 U.S.C. § 13501(1)(C) – is identical to the language relating to shipments from foreign countries to the United States – 49 U.S.C. § 13501(1)(D).

carriers downstream."[13]  Id. at 29, 125 S.Ct. at 396.  Finally, the Court pointed out

that COGSA  explicitly authorizes such clauses.  Id (citing 46 U.S.C. § 1307).

Thus, the Court held that Norfolk Southern, the rail carrier having custody of the

machinery at the time of its damage, was entitled to the protection of the liability

limitations in the through bill of lading.

Altadis' position in this case is in tension with Norfolk Southern in that it

would introduce uncertainty and lack of uniformity into the process of contracting

for carriage by sea, upsetting contractual expectations expressed in through bills of

lading.  Given the holding Norfolk Southern, which recognizes that a rail carrier on

the inland leg of a maritime contract is protected by the limitations in a through bill

of lading, Altadis' position would introduce a different result if the inland carrier

were a motor carrier.  The purpose of COGSA to "facilitate efficient contracting in

contracts for carriage by sea" would be undermined.  Norfolk Southern, 543 U.S. at

29, 125 S.Ct. at 396.

In light of the Supreme Court's opinion in Norfolk Southern, the almost

uniform case law, and dicta in our own Swift decision, we hold that – in the

---

[13]       A Himalaya Clause operates to extend the contractual limitations on liability
beyond the initial contracting carrier (e.g., the ocean carrier) to include also downsteam carriers
(e.g., the land carrier, Norfolk Southern in the Supreme Court case).  The bill of lading in this
case also includes such a clause.

absence of a separate domestic bill of lading covering the inland leg – the Carmack Amendment, and its two-year minimum statute of limitations, does not apply to this maritime contract covering a shipment pursuant to a single through bill of lading which governs the ocean voyage from Puerto Rico to Jacksonville and also the inland transportation to Tampa. Accordingly, the district court correctly concluded that the one-year statute of limitations provided for in the bill of lading and in COGSA was applicable.

Finally, we turn to Sea Star's appeal of the district court's denial of its two cross-claims against ATF. Sea Star filed two cross-claims against ATF, asserting a common law claim (for contribution and indemnity), and a breach of contract claim (seeking attorneys fees). With respect to the common law claim, we affirm the district court's denial of summary judgment for Sea Star. Because there is no liability on the part of Sea Star to Altadis, there is nothing for it to receive from ATF by way of contribution or indemnity. With respect to the breach of contract claim, it is unclear from the record whether the district court directly addressed this issue. Having found Sea Star was unable to prove the first requirement for common law indemnification – proving liability to a third party– the district court denied its motion for summary judgment on both cross-claims and closed the case without directly referring to the contract claim or the language of the relevant

contract. We decline to address Sea Star's breach of contract cross-claim, preferring for the district court to address it in the first instance. Accordingly, we vacate the district court's implicit denial of Sea Star's breach of contract cross-claim against ATF and remand that individual claim for consideration by the district court. As to all other claims raised on appeal, the judgment of the district court is affirmed.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.