**KELLAWAY INTERMODAL & DISTRIBUTION SYSTEMS, INC., Plaintiff,**

v.

**THE GILLETTE COMPANY, Defendant.**

**Civil Action No. 2006–10752–RCL.**

United States District Court, D. Massachusetts.

Sept. 24, 2008.

Wesley S. Chused, Bertram E. Snyder, Looney & Grossman LLP, Boston, MA, for Plaintiff.

Kevin C. Cain, Peabody & Arnold LLP, Boston, MA, Marc A. Rubin, Hyman, Spector & Mars LLP, Miami, FL, for Defendant.

WILLIAM G. YOUNG, District Judge.

Electronic ORDER entered Adopting re [32] Report and Recommendations. Partial summary judgment shall enter in favor of Gillette in accordance with this report. The cross motions are otherwise denied.

*REPORT AND RECOMMENDATION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT (## 16, 17)*

COLLINGS, United States Magistrate Judge.

## I. INTRODUCTION

This dispute arises out of a shipment of goods destined for England but destroyed by fire on the New Jersey Turnpike. In broad overview, the plaintiff, Kellaway Intermodal & Distribution Systems, Inc. ("Kellaway"), a trucking company, was hired by P & O Nedlloyd Limited ("Nedlloyd"), an ocean carrier, to complete the inland portion of an overseas shipment of goods for The Gillette Company ("Gillette"). Kellaway was to carry the goods from Massachusetts to the Port of Philadelphia, where the goods were to be loaded onto Nedlloyd's vessel. The goods were completely destroyed by fire during this inland leg of the trip.

On April 27, 2006, Kellaway filed a Complaint for Declaratory Relief (# 1), asking the Court to declare that any action by Gillette related to the loss of the goods is time-barred because it does not fall within the one-year time for suit provision contained in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq.* (*See* # 1 ¶¶ 14, 33) After some preliminary discovery, the parties filed their Joint Stipulation of Agreed Facts and Admissibility of Documents (# 15), cross-motions for summary judgment with accompanying memoranda (*see* # 16, Defendant, the Gillette Company's Cross–Motion for Summary Judgment & Incorporated Memorandum of Law; # 17, Plaintiff Kellaway Intermodal & Distribution Systems, Inc.'s Motion for Summary Judgment; # 21, Kellaway Intermodal & Distribution System, Inc.'s Memorandum in Support of its Motion for Summary Judgment), and opposition briefs (*see* # 24, Defendant, The Gillette Compa-

ny's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment; # 25, Plaintiff's Opposition to Defendant's Motion for Summary Judgment). With this Court's leave, Kellaway filed a supplemental brief (see # 30, Plaintiff's Supplemental Memorandum in Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment—USA Clause Paramount Argument). The Court heard oral argument on May 19, 2008. The parties' cross-motions for summary judgment are ripe for resolution.

## II. FACTUAL BACKGROUND

In September 2004, UTi–US, acting as freight forwarder for Gillette, selected ocean carrier Nedlloyd to transport the goods at issue from Gillette's warehouse in Ayer, Massachusetts, to Hemel–Hempstead, England. (# 15 ¶¶ 6, 7, 39) Nedlloyd in turn hired Kellaway to transport the goods for the inland portion of the journey from Gillette's warehouse in Massachusetts to the Port of Philadelphia, Pennsylvania where the goods were to be loaded onto Nedlloyd's vessel. (# 15 ¶ 9) Gillette had no direct contact with either Nedlloyd or Kellaway, instead allowing UTi–US to act as its forwarder. (# 15 ¶ 6) Kellaway, as the inland motor carrier, communicated only with Nedlloyd about the movement of the goods and contractual arrangements, and Kellaway invoiced and was paid by Nedlloyd for its services. (# 15 ¶¶ 18, 19, 20, 36)

On September 30, 2004, Kellaway's truck caught on fire on the New Jersey Turnpike during the transport from Massachusetts to Philadelphia. (# 15 ¶ 21) Gillette's goods were a total loss. (# 15 ¶ 31) It is undisputed between the parties that when the goods were damaged by fire they were in the exclusive possession, custody and control of Kellaway and that the goods had been delivered to Kellaway in good order and condition. (# 15 ¶¶ 24, 25) The parties also agree that at the time of the loss the goods were valued at $253,102.99. (# 15 ¶ 28)

Nedlloyd never issued a hard copy of an ocean bill of lading to either UTi–US or Gillette, (# 15 ¶ 41; Exh. 4, 7), apparently because the goods were never loaded on board Nedlloyd's vessel, id. Although the booking details of the shipment provided by UTi–US would have become the basis for a draft bill of lading in Nedlloyd's computer system, (# 15 ¶ 45; Exh. 4, 7, 8), that computer system no longer exists, having "been put somewhere in cyberspace" when Nedlloyd was acquired by Maersk Lines in August 2005. (Affidavit of Bertram E. Snyder, Esq., # 18, Exh. A, at 24)

## III. DISCUSSION

### A. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 42 (1st Cir.2005) (internal quotations and citation omitted). The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top–Flite Golf Co., 335 F.3d 15, 19 (1st Cir.2003). " 'Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that such a dispute exists.' " Cordero–Soto v. Island Finance Inc., 418 F.3d 114, 119 (1st Cir. 2005) (quoting Rathbun v. Autozone, Inc., 361 F.3d 62, 66 (1st Cir.2004)); see also Mulvihill, 335 F.3d at 19.

When considering whether to grant summary judgment, the Court must determine whether "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir.2006). Thus, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## B. *The Merits*

Two statutory schemes are at issue here: the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 30701 *et seq.*, and the ICC Termination Act of 1995 (the "Carmack Amendment"), 49 U.S.C. §§ 14706 et seq. Kellaway argues that any action by Gillette to recover the value of the lost goods is time-barred under COGSA's one-year time for suit provision. In making this argument, Kellaway relies on certain terms contained in the unissued Nedlloyd ocean bill of lading. Gillette argues that even if the bill of lading applies, COGSA does not govern because the unissued bill of lading does not extend COGSA's terms to the inland leg of the shipment. Gillette contends that the Carmack Amendment governs the loss here, and that Gillette has established liability under the Carmack Amendment as a matter of law.

For present purposes, the parties have submitted the standard bill of lading used by Nedlloyd at the time of the incident in September of 2004. (# 15 ¶ 46; Exh. 9, resubmitted as Exh. 29) The Court assumes arguendo that the standard unissued Nedlloyd bill of lading governs the relationship between the parties. The Court also assumes that Kellaway is a "sub-contractor" under the bill of lading's so-called "Himalaya Clause." [1]

---

**1.** As the Supreme Court explained in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 20, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004), a "Himalaya Clause" permits an ocean carrier such as Nedlloyd to extend liability limitations contained in its bill of lading to "other downstream parties expected to take part in the contract's execution." Here, the relevant Himalaya Clause provides:

**4. Subcontracting and Indemnity**

(1) The Carrier shall be entitled to subcontract the Carriage on any terms whatsoever.

(2) The Merchant undertakes that no claim or allegation shall be made against any Person whomsoever by whom the Carriage is performed or undertaken (including all Sub–Contractors of the Carrier), other than the Carrier, which imposes or attempts to impose upon any such Person, or any vessel owned by any such Person, any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of the negligence on the part of such Person and, if any such claim or allegation should nevertheless be made, the Merchant will indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing every such Person or vessel shall have the benefit of every right, defense, limitation and liberty of whatsoever nature herein contained or otherwise available to the Carrier ... as if such provisions were expressly for his benefit and, in entering [the] contract, the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent and trustee for such Persons or vessel.

# 15 ¶ 47.

*1. Whether COGSA bars Gillette's suit?*

Kellaway argues that the present action is time-barred under COGSA's one-year time for suit provision. The first question is whether COGSA applies at all to the loss here, assuming the Nedlloyd bill of lading applies here. "By its terms, COGSA governs bills of lading for the carriage of goods 'from the time when the goods are loaded on to the time when they are discharged from the ship.'" *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 29, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) ("*Kirby*") (quoting 46 U.S.C.App. § 1301(e)) [2]. However, "COGSA also gives the option of extending its rule by contract." *Id.*[3] So while COGSA ordinarily applies from "tackle to tackle," parties can contract to extend its application "beyond the 'tackles'—that is, to potential damage on land as well as on sea." *Id.* at 21, 125 S.Ct. 385. In *Kirby* itself, for example, the bill of lading at issue adopted COGSA's default liability rule (of $500 per package) and included a clause "extending that liability limitation beyond the 'tackles.'" *Id.* In suggesting that COGSA's one-year limitation period applies to bar any suit by Gillette against it, Kellaway relies on the bill of lading's Clause Paramount, ¶ 27, which states as follows:

27. USA Clause Paramount (if applicable)

(1) If Carriage includes carriage to, from or through a port in the United States of America, this Bill of Lading shall be subject to the United States Carriage of Goods by Sea Act 1936 (U.S. COGSA), the terms of which are incorporated herein and shall be paramount throughout Carriage by sea and the entire time that the Goods are in the actual custody of the Carrier or his Sub–Contractor at the sea terminal in the United States of America before loading onto the vessel or after discharge therefrom, as the case may be.

(2) The Carrier shall not be liable in any capacity whatsoever for loss, damage or delay to the Goods while the Goods are in the United States of America away from the sea terminal and are not in the actual custody of the Carrier. At these times the Carrier acts as agent only to procure Carriage by Persons (one or more) under the usual terms and conditions of those Persons. If, for any reason, the Carrier is denied the right to act as agent only at these times, his liability for loss, damage or delay to the goods shall be determined in accordance with Clause 6 hereof.

# 15 ¶ 49; # 29 ¶ 27.

▮ Here, Nedlloyd's bill of lading adopts COGSA's terms, but only extends COGSA's provision to the "time that the Goods are in the actual custody of the Carrier or his Sub–Contractor at the sea terminal." As *Kirby* instructs, deciding whether COGSA's terms extend to Kellaway "is a simple question of contract interpretation." *Id.* at 30, 125 S.Ct. 385. The

2. COGSA was changed in 2006 to codify the Harter Act, and is now 46 U.S.C. §§ 30701 through 30707. Although changes to language and style were made, no changes in the substance of the COGSA were intended. *See* 46 U.S.C. § 30701 (2006).

3. Specifically, COGSA provides:
Nothing contained in this chapter [this note] shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.
46 U.S.C. § 30701 app. § 7.

Court concludes that even if the bill of lading applied here, its plain language does not extend COGSA to cover the carriage of goods outside the sea terminal. The loss that occurred on the New Jersey Turnpike is plainly not covered, and COGSA's one-year statute of limitation does not apply. Indeed, other provisions in the bill of lading, such as ¶ 27(2) above, make plain that Nedlloyd did not intend to extend COGSA beyond the period of loading and unloading.

Kellaway argues that to conclude that COGSA does not govern the loss at issue would run afoul of *Kirby*, and would deny Kellaway the benefit of the Himalaya Clause, *supra* note 2. The Court disagrees. If Nedlloyd had extended COGSA's provisions beyond the sea terminal, then under *Kirby*, Kellaway no doubt could have claimed COGSA's protections as a subcontractor under the Himalaya Clause.[4] However, the Himalaya Clause in the in-

stant case, does not confer on Kellaway any limitations on liability that Nedlloyd did not contractually reserve for itself.[5]

## 2. Whether the Gillette has established liability under the Carmack Amendment?

Because the Court concludes that COG-SA does not apply to bar the suit, the Court next considers Gillette's contention that it has established prima facie liability under the Carmack Amendment. (*See* # 16 at 7–8) The Carmack Amendment "governs the liability of [motor] carriers for lost or damaged goods in interstate commerce," *Camar Corporation v. Preston Trucking Co., Inc.*, 221 F.3d 271, 274 (1st Cir.2000), and provides that a " 'carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading,' " *id.* (quoting 49 U.S.C. §§ 10730, 11707 [recodified at 49 U.S.C. § 14706] ).

4. *See Royal & Sun Alliance Insurance PLC v. Ocean World Lines, Inc.*, 572 F.Supp.2d 379 (S.D.N.Y.2008), a case "indistinguishable" from *Kirby. Id.* at 389. In the *Royal & Sun* case, the "Clause Paramount" in the bill of lading provided, in pertinent part:

1) If carriage includes carriage to, from or through a port in the United States of America this Bill of Lading shall be subject to COGSA, the terms of which are incorporated herein and shall be paramount through carriage by sea and the entire time that the Goods are in the actual custody of the Carrier or its sub-contractor at the sea-terminal in the United States of America before loading onto the Vessel or after discharge therefrom as the case may be. **COGSA shall be extended to apply to all goods before the Goods are loaded on and after they are discharged from the Vessel and throughout the entire time during which Carrier is responsible for the goods under the Bill of Lading** ...

*Id.* at 384 (emphasis supplied). No such language appears in the instant case. In fact, the language in the instant case is directly opposite. *See* Clause 27(2) quoted on p. 308, *supra*.

5. For this reason, the Court need not consider the parties' arguments about the apparent intercircuit conflict between *Sompo Japan Ins. Company v. Union Pacific RR Company*, 456 F.3d 54 (2nd Cir.2006), and *Altadis USA, Inc. v. Sea Star Line, LLC*, 458 F.3d 1288 (11th Cir.2006), *cert. granted*, 549 U.S. 1106, 127 S.Ct. 853, 166 L.Ed.2d 682 (2007) and *cert. dismissed*, 549 U.S. 1189, 127 S.Ct. 1209, 166 L.Ed.2d 1012 (2007). In both cases, the operable through bill of lading had extended COGSA beyond the period of loading and unloading to the inland portion of the shipment. *See Sompo Japan Ins. Company*, 456 F.3d at 56 (noting that bill of lading at issue entitled carrier to the benefits of the defenses and limitations of COGSA "whether the loss or damage to the Goods occurs at sea or not"); *Altadis USA, Inc.*, 458 F.3d at 1289 n. 1, 1290 (noting that through bill of lading at issue expressly included one-year limitations period, and also extended COGSA to inland carriers). Because the Court concludes that the Nedlloyd bill of lading did not attempt to extend COGSA to inland carriers, the Court need not enter this debate.

It is undisputed that Kellaway is a motor carrier, and that Kellaway was transporting Gillette's property between two different states at the time its vehicle caught fire. (# 15 ¶¶ 2, 9, 10, 21) Therefore, the Carmack Amendment applies to the inland motor portion of the shipment.

▮ A prima facie case of liability under the Carmack Amendment is established where a plaintiff shows that delivery was made to the carrier in good condition, the goods arrived damaged, and the amount of damages caused by the loss is established. *Camar Corp.*, 221 F.3d at 274. Here, the parties have stipulated that the goods were delivered to Kellaway in good order and condition, (# 15 ¶ 25), that the goods were in Kellaway's exclusive custody and control when they were damaged by fire, (# 15 ¶ 24), and that, as a result of the fire, Gillette's goods were a total loss. (# 15 ¶ 31) Gillette and Kellaway also agree that the goods were valued at $253,102.99 at the time of the loss. (# 15 ¶ 28) Under the parties' stipulated facts, Gillette has established a prima facie case of liability against Kellaway, and is entitled to summary judgment on this issue. Without more, Kellaway would be liable under the Carmack Amendment for the "actual loss or injury to the property." 49 U.S.C. § 14706(a)(1).

Under the Carmack Amendment, however, a carrier may "establish rates for the transportation of property ... under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A). Kellaway contends that its liability is limited to

$100,000, the released value stated in Kellaway's published tariff on July 1, 2004.[6] The terms of the tariff are as follows:

> **Cargo Liability:** RoadLink USA Companies' liability for cargo loss or damage will in no case exceed $100,000 per occurrence. Shipments will not be accepted unless released to $100,000. Customer may request an increase in legal liability by submitting a written request for a higher Released Value, and paying an additional fee. The fee equals 0.1% of the difference between the desired Released Value and $100,000. If a shipment is inadvertently accepted without Customer executing the required Released Value declaration, RoadLink USA Companies' liability will be limited to no more than $100,000.

# 15, Exh. 17 at 2.

▮ Under First Circuit law, a carrier can take specific action to limit its liability under the Carmack Amendment by "(1) maintaining an appropriate tariff; and (2) obtaining a 'written declaration of the shipper or ... written agreement between the carrier ... and shipper' as to the 'limited' value of the shipment." *Camar Corp.*, 221 F.3d at 276 (quoting 49 U.S.C. § 11707(a) [recodified at 49 U.S.C. § 14706(c)(1)(A)]); *see also Hollingsworth & Vose Co. v. A–P–A Transp. Corp.*, 158 F.3d 617, 618 (1st Cir.1998). In determining whether a shipper has had a "fair opportunity" to choose between rates offered in a tariff, under First Circuit law

> '[i]t is enough that the tariff made both coverages available, the bill of lading afforded the shipper a reasonable opportunity to choose between them ... and the shipper was a substantial commercial enterprise capable of understanding

---

**6.** Gillette makes the undeveloped argument that "the introduction page of the RoadLink USA Tariff ... states that this is a confidential and proprietary document intended only for the customers of RoadLink USA." (# 16 at 19)

the agreements it signed. In our view, that is normally enough to give this shipper a 'fair opportunity' to opt for more coverage in exchange for a higher rate.'

*Camar Corp.*, 221 F.3d at 276 (quoting *Hollingsworth & Vose Co.*, 158 F.3d at 621).

Gillette argues that the terms of Kellaway's tariff are unenforceable because Kellaway has stipulated that it never communicated with Gillette or Uti–US, and because the standard Kellaway bill of lading (which the parties agree Kellaway did not issue in this case) [7] did not give Gillette a "fair opportunity" to declare an increased value. (*See* # 16 at 4–5)

Under the Carmack Amendment, "[f]ailure to issue a receipt or bill of lading does not affect the liability of the carrier." 49 U.S.C. § 14706(a)(1). Thus, the terms of the un-issued Kellaway bill of lading would have no bearing on the question of liability here. *See Hollingsworth & Vose Company*, 158 F.3d at 620 n. 4 (noting that nothing in the Carmack Amendment requires a carrier to issue a bill of lading). If there is nothing in the record "evidenc[ing] an agreement affording [the shipper] a reasonable opportunity to choose between the regular rate and a rate reflecting a higher level of liability," *Camar Corp.*, 221 F.3d at 276, then Kellaway has not sufficiently demonstrated an agreement to limit liability, *id.*

Here, however, Kellaway points to the standard bill of lading that Gillette itself issued. (*See* # 15, Exh. 20) That bill of lading provides that the property was "[r]eceived, subject to the classifications and tariffs in effect on the date of issue of this Original Bill of Lading." (# 15, Exh.

20) The Gillette bill of lading further states:

> Shipper hereby certifies that he is familiar with all the terms and conditions of the bill of lading set forth in the classification or tariff which governs the transportation of this shipment, and the terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

# 15, Exh. 20

Thus, Kellaway suggests that Gillette is bound by the terms of the tariff because Gillette's own bill of lading incorporates and accepts the terms of the tariff and thereby limits the value of the goods by means of "a written or electronic declaration of the shipper," as required under the statute. (*See* # 21 at 20)

There is certainly legal authority for Kellaway's argument that a shipper's own bill of lading can effectively limit a carrier's liability. *See Hollingsworth & Vose Company*, 158 F.3d at 620 n. 4 (noting that "nothing in the Carmack Amendment precludes the use of a shipper's bill of lading"); *see also Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1271–1273 (11th Cir. 2001) (discussing shipper-drafted bills of lading, and concluding that shipper cannot be heard to complain "where the shipper drafted the bill of lading and incorporated industry-specific terminology which … indisputably includes a limitation of liability") (and cases cited); *Hillenbrand Industries Inc. v. Con–Way Transp. Services Inc.*, 2002 WL 1461687, at *5–7 (S.D.Ind. Jun.19, 2002) (discussing cases involving shipper-drafted bills of lading). Indeed, *Hollingsworth & Vose Company* itself involved a bill of lading that had been drafted by the shipper.[8] Gillette, however, has

---

7. The parties submitted a blank copy of a typical ground bill of lading used by Kellaway for ground truck shipments in September 2004. (# 15 ¶ 72; Exh. 16)

8. The shipper-prepared bill of lading in *Holl-*

not responded to Kellaway's argument that Gillette's own bill of lading evidences an agreement to incorporate and accept the tariff: Gillette's arguments focus entirely on whether Kellaway limited its liability under Kellaway's *own* un-issued bill of lading.[9] In short, the parties have not adequately addressed the question whether the Gillette bill of lading "constitute [s] a sufficient agreement to limit liability," *Camar Corp.*, 221 F.3d at 276, and for this reason, summary judgment is unwarranted on this point at this juncture.[10]

## IV. CONCLUSION

For the reasons stated above, the Court RECOMMENDS that partial summary judgment be entered in Gillette's favor to the extent that the Court rules that the action is not barred under COGSA and that Gillette has established a prima facie case of liability under the Carmack Amendment, 49 U.S.C. § 14706(a)(1). The Court FURTHER RECOMMENDS that summary judgment otherwise be denied.

## V. REVIEW BY THE DISTRICT JUDGE

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated: Sept. 9, 2008.

---

*ingsworth & Vose Company* "contained a declared value blank permitting [the shipper] to declare the value of the equipment and invoke a different level of liability." *Camar Corp.*, 221 F.3d at 276 (citing *Hollingsworth & Vose Company*, 158 F.3d at 620). Apparently, however, the bill of lading did not incorporate by reference the tariff at issue, as does the bill of lading here. *Cf. Camar*, 221 F.3d at 276 ("In *Hollingsworth*, we rejected [the] apparent requirement of a writing indicating assent to a limitation of liability *in addition to* a bill of lading containing a standard declared value blank." (emphasis in original)).

9. Likewise, such cases as *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834 (11th Cir.2003), on which Gillette relies, are not on all fours here. *Sassy Doll Creations, Inc.* involved a carrier-issued bill of lading, and the Eleventh Circuit expressly distinguished other cases in which a shipper has issued its own bill of lading. *See id.* at 839–840.

10. The Court notes that Kellaway moved for summary judgment in its opening summary judgment papers only on the limited question of whether COGSA's one-year statute of limitation bars any action by Gillette. (*See* # 17 at 1) Kellaway moved for partial summary judgment on the question of whether it has effectively limited its liability for the first time (as the Court reads the papers) in its Opposition to Defendant's Motion for Summary Judgment (# 25 at 16).